Delair WATSON, Appellant,

v.

The STATE of Texas.

No. PD–469–05.

Court of Criminal Appeals of Texas.

Oct. 18, 2006.

---

**18.** *Id.* at 630 (citing *Boyde,* 404 F.3d 1159, 1176 (9th Cir.2005)).

**19.** *Boyde,* 404 F.3d at 1176–1177.

Stan Schwieger, Waco, for Appellant.

Betty Marshall, Asst. State Prosecuting Attorney, Austin, for State.

### OPINION

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON and HOLCOMB, JJ., joined.

We granted the State's petition for discretionary review in this cause to address the question whether the court of appeals can reverse a conviction on the basis of factual insufficiency of the evidence even

when it believes that the evidence preponderates in favor of guilt, consistent with our opinion in *Zuniga v. State*.[1] Moreover, we granted discretionary review on our own motion to address the further question whether we should undertake further clarification of the *Clewis*[2] standard for factual-sufficiency review as articulated in *Zuniga*. We now recognize that the *Zuniga* re-articulation of the *Clewis* standard represents an inadvertent distortion of factual-sufficiency review as historically conducted by this Court and its predecessors, and to that extent we overrule it.

### I. FACTS AND PROCEDURAL POSTURE

The appellant was prosecuted for the burglary of a habitation during which he allegedly attempted to commit sexual assault. The jury convicted him of this offense and assessed his punishment at thirteen years' confinement in the penitentiary. On appeal he challenged both the legal and factual sufficiency of the evidence. The Tenth Court of Appeals found the evidence legally sufficient.[3] However, finding the evidence factually insufficient, the court of appeals reversed the conviction and remanded the cause for a new trial.[4] On the authority of our opinion in *Zuniga*, the court of appeals held that, even though the evidence preponderated in favor of finding an intent to commit sexual assault, it was nevertheless factually insufficient to support a finding of such an intent to a level of confidence beyond a reasonable doubt.[5] We granted the State's petition for discretionary review to determine whether *Zuniga* does

1. 144 S.W.3d 477 (Tex.Crim.App.2004).

2. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996).

3. *Watson v. State*, 160 S.W.3d 627 (Tex.App.- Waco 2005).

4. *Id.* at 630–31.

5. *Id.* at 630.

indeed authorize reversal when the legally sufficient evidence supporting the verdict "equals or outweighs the contrary evidence[.]" On our own motion, we expanded review to include the question whether we should re-examine *Zuniga*. In order to gain a proper perspective on these issues, we think it useful to review the origins and history of factual-sufficiency review in Texas.

## II. FACTUAL–SUFFICIENCY REVIEW BEFORE *CLEWIS*

The authority of criminal appellate courts in Texas to reverse criminal convictions on the basis of factually insufficient evidence did not begin with our opinion in *Clewis*. Criminal appellate courts in Texas have always had, within their constitutional "appellate jurisdiction," the authority to review criminal convictions for what we now call "factual sufficiency" of the evidence. This includes the authority to reverse cases we would now regard as supported by "legally sufficient" evidence when the verdict nevertheless seems to be against the great weight and preponderance of the evidence. That authority has been codified in all former incarnations of what is now Article 44.25 of the Code of Criminal Procedure, authorizing criminal appellate courts to "reverse" (nee "revise")

criminal judgments "as well upon the law as upon the facts[.]" [6] *Clewis* did not invent factual sufficiency. Instead, the Court in *Clewis*, with an assist from our earlier opinions in *Meraz v. State*,[7] and *Bigby v. State*,[8] rediscovered factual sufficiency, and resurrected it from a brief, court-imposed dormancy.

### A. *Bailey, Smith* and *Bishop*

The authority of criminal appellate courts in Texas to review factual sufficiency derives from the Texas Constitution. Both *Bigby*, and later *Clewis*, cite a trio of very old Texas Supreme Court cases for the proposition that criminal appellate courts in Texas have the authority, within their constitutionally endowed "appellate jurisdiction," to conduct a factual review. None of these cases, *Bailey v. Haddy*,[9] *Republic of Texas v. Smith*,[10] and *Bishop v. State*,[11] purports to hold that such a factual review embraces what we now call a "factual sufficiency" analysis. But each confirms that, first under the 1836 Constitution of the Republic, and then under succeeding state constitutions, the Supreme Court's appellate jurisdiction over criminal cases included the power to revise the case "upon the law as upon the facts." [12] This is precisely how a majority of this Court would come to construe these cases in *Bigby* [13]

6. TEX.CODE CRIM.PROC. art. 44.25. *See* "Old Code" (1856) Art. 744; 1879 Code Art. 870; 1895 Code Art. 905; 1911 Code Art. 939; 1925 Code Art. 848.

7. 785 S.W.2d 146 (Tex.Crim.App.1990).

8. 892 S.W.2d 864 (Tex.Crim.App.1994).

9. Dallam 376 (Tex.1841).

10. Dallam 407 (Tex.1841).

11. 43 Tex. 390 (1875).

12. *Bailey v. Haddy, supra*, at 378; *Republic of Texas v. Smith, supra*, at 410–11; *Bishop v.*

*State, supra*, at 399–401 (citing Old Code (1856) Art. 744). *Cf. Carter v. State*, 656 S.W.2d 468 (Tex.Crim.App.1983) (construing *Smith* and *Bishop* to confer appellate jurisdiction "to revise the whole case upon the law and facts," so as to authorize criminal appellate courts to entertain unassigned, fundamental error on appeal).

13. 892 S.W.2d at 871–72. On its face, *Bigby* might appear to be a plurality opinion. Only Judge Meyers, the author, adhered to the entire opinion. Judge White filed a concurring opinion, however, in which he expressly joined the entire opinion *except* for its treatment of the appellant's eighth point of error,

None of these earliest cases expressly declared that factual-sufficiency review, *per se*, was authorized in criminal cases. But later cases construed the criminal appellate "fact" jurisdiction in Texas, first recognized in these earliest cases, to include what we would now call factual-sufficiency review. Moreover, Old Code Article 744, and all later iterations of that provision up until the 1981 amendment to present-day Article 44.25,[14] expressly contemplated that criminal appellate courts had the power to "reverse[ ] for the reason that the verdict is contrary to the weight of the evidence[.]"

### B. *Tollett* and *Loza*

Among the very earliest cases to address sufficiency of the evidence were *Tollett v. State*[15] and *Loza v. State*.[16] In each of these cases, the respective courts conducted an analysis that, to the contemporary ear, sounds much like what we would now call a "legal sufficiency" analysis. Neither *Tollett* nor *Loza* explicitly holds that the factual jurisdiction of criminal appellate courts in Texas includes the power to conduct a factual-sufficiency review, *per se*. But they do not rule it out either, and,

like the earliest Texas Supreme Court cases, they do confirm the general factual jurisdiction of criminal appellate courts. Nevertheless, *other* cases from this period from the Texas Court of Appeals, the direct predecessor of this Court, demonstrate that the Court well "understood the nature and extent of its power to review jury verdicts for evidentiary sufficiency, albeit not then labelled 'legal sufficiency' and 'factual sufficiency.'"[17] Some of those cases utilize language that sounds distinctly as though it belongs in the latter category.[18]

### C. *Walker*

In *Walker v. State*, the Texas Court of Appeals (the direct predecessor of this Court) undertook a detailed analysis of the prior case law touching on the question of evidentiary sufficiency.[19] From that analysis the Court distilled the following "rules of practice":

> From a careful consideration of the cases in which this subject has been discussed, we deduce the following rules of practice governing this court, *viz:*

a voir dire issue. Four other judges joined Judge White's concurrence, making a six-judge majority for the resolution of the appellant's first point of error, in which the Court determined it had jurisdiction in a capital appeal to conduct a factual-sufficiency review. Judge Campbell did not participate. One judge, Judge Baird, concurred in the result without joining any portion of Judge Meyers's opinion. And Judge Clinton filed a dissent to the Court's resolution of the appellant's eighth point of error. Neither Judge Baird nor Judge Clinton expressed any view of the factual-sufficiency issue, although their views might be considered evident from the fact that they both later joined Judge Maloney's opinion for the Court in *Clewis*.

**14.** *See* note 6, *ante; Bigby v. State, supra,* at 874–75 n. 5.

**15.** 44 Tex. 95 (1875).

**16.** 1 Tex.Ct.App. 488 (1877).

**17.** *Clewis v. State, supra,* at 138 (Clinton, J., concurring).

**18.** *See March v. State,* 3 Tex.Ct.App. 335, 336 (1877); *Lockhart v. State,* 3 Tex.Ct.App. 567, 570 (1878); *Blake v. State,* 3 Tex.Ct.App. 581, 587 (1878). With respect to these cases, Judge Clinton observed in his concurring opinion in *Clewis:* "In each case the Court determined '*factual sufficiency*' on conflicting evidence according to whether, as variously phrased, the verdict or judgment works an 'injustice' to defendant; is 'clearly and manifestly wrong;' or is 'manifestly wrong.'" 922 S.W.2d at 138 n. 4.

**19.** 14 Tex.Ct.App. 609 (1883).

First. Where the evidence is conflicting, and there is sufficient, if believed, to prove the case of the State, the jury being the exclusive judges of the credibility of the testimony, their verdict will not be set aside *unless it clearly appears to be wrong.*

Second. Where there is no testimony to support it, the verdict will be set aside.

Third. Where the evidence is insufficient to rebut the presumption of innocence, the verdict will be set aside.

Fourth. Where the verdict *is contrary to the weight of the evidence,* it will be set aside.[20]

The discussion that the Texas Court of Appeals undertook in *Walker* just before it set out these "rules of practice" seems manifestly to contemplate multiple and variable *standards* of sufficiency review, not variations on a *single* standard. The *Walker* rules even include a standard whereby the Court was authorized to reverse a conviction "though there was evidence sufficient to support it."[21] In its entirety, omitting string citations, the *Walker* discussion reads as follows:

With reference to the authority of this court to set aside a verdict when that verdict is, in our judgment, against the weight of the evidence, or not supported by it, we think the statute confers it. Article 870 of the [1879] Code of Criminal Procedure provides: "The Court of Appeals may revise the judgment in a criminal action, as well upon the law as upon the facts; but when a cause is reversed for the reason that the verdict is contrary to the weight of evidence, the same shall, in all cases, be remanded for a new trial."

With reference to trials by jury it is provided: "The jury are the exclusive judges of the facts in every criminal cause." ( [1879] Code Crim. Proc., Art. 676) And again it is provided: "The jury in all cases are the exclusive judges of the facts proved, and of the weight to be given to the testimony, except," etc. ( [1879] Code Crim. Proc., Art. 728.)

While Article 870, above quoted, expressly confers the authority to revise the *facts,* and to reverse the judgment for the reason that the verdict is contrary to the *weight of evidence,* it has been the general practice of this court to refuse to set aside a verdict where the evidence was *conflicting,* but where there was *sufficient,* if believed, to support the finding.

But even in such case, where it was manifest that the verdict was wrong, and it was clear that injustice had been done the defendant, it has been set aside, though there was evidence sufficient to support it.

And it has never been doubted, but has always been considered by this court, not only that it had the authority, but that it was its duty to set aside a verdict where that verdict was contrary to the evidence, or unsupported by it, though it is with reluctance that the court will disturb a verdict where there is any evidence to sustain it.[22]

It could not be more clear from this discussion that the Texas Court of Appeals deemed itself authorized to reverse convictions under a number of distinct scenarios,

---

**20.** *Id.* at 630 (emphasis supplied). Commenting on these "rules" (note the plural form), Judge Clinton identified the first and fourth as "but variations on a 'factual sufficiency' theme." *Clewis v. State, supra,* at 139 n. 5. The second and third rules seem to articulate what we would now call "no evidence" and "legal sufficiency" standards, respectively.

**21.** 14 Tex.Ct.App. at 629.

**22.** *Id.* at 629–30 (emphasis in the original).

and that the "rules of practice" that immediately follow are not meant to be understood as variations on a single insufficiency theme, but as, indeed, separate "rules."

It is also imperative to note the Texas Court of Appeals's reference to the predecessors of present-day Articles 36.13 and 38.04 of the Code of Criminal Procedure.[23] These are the provisions that reserve the fact-finding function to the jury. That the Texas Court of Appeals would juxtapose a reference to these statutory provisions with its discussion of its own authority to reverse a conviction that is against the weight of the evidence, or manifestly wrong or unjust, notwithstanding "there was evidence sufficient to support it," demonstrates that the statutory provisions have peacefully co-existed with that appellate authority for at least a hundred and twenty-three years. From their placement in Chapters 36 and 38 of the Code, which govern trial practice and procedure, it is apparent that Articles 36.13 and 38.04 were meant merely to allocate the fact-finding function at the trial level and do not purport to affect appellate review.[24] It is true that they have often been cited for

the proposition that jury verdicts should not *ordinarily* be disturbed when supported by competent evidence. But criminal appellate courts in Texas have *never* interpreted them to wholly prohibit the limited factual review that is otherwise inherent in their appellate jurisdiction, and authorized by Article 44.25 and its predecessors.

After *Walker*, in cases of conflicting testimony or evidence, the Texas Court of Appeals continued to measure sufficiency of the evidence by inquiring, *inter alia*, whether the verdict was against the great weight of the evidence.[25] In several of those cases the Court reversed the convictions, expressly finding the evidence to be, indeed, against the weight of the evidence.[26]

### D. Factual–Sufficiency in the Texas Court of Criminal Appeals

When the Texas Court of Appeals became the Texas Court of Criminal Appeals in 1891, we continued to exercise our constitutionally endowed factual review authority to review cases for factual suffi-

23. TEX.CODE CRIM. PRO. arts. 36.13 & 38.04. Neither of these statutory provisions has been substantively revised since they first appeared in the Old Code (1856) as Articles 593 and 643, respectively.

24. *Clewis v. State, supra,* at 134–35.

25. *E.g., Grimmett v. State,* 22 Tex.Ct.App. 36, 42, 2 S.W. 631, 634 (1886) ("While the evidence develops a strange, and to our minds somewhat improbable state of facts, still it is direct, positive, and fills the measure of the law. * * * There being sufficient evidence to support the verdict, *and the verdict not being contrary to the great weight and preponderance of the evidence,* it is beyond the province of this court to set aside the conviction, however much we might doubt the truth of the evidence.") (emphasis added).

26. *Wilkerson v. State,* 21 Tex.Ct.App. 501, 504–05, 2 S.W. 857, 857–58 (1886) ("the ver-

dict and judgment in this case are against the weight of the evidence ..."); *McLaren v. State,* 21 Tex.Ct.App. 513, 516, 2 S.W. 858 (1886) ("This conviction is not only not supported by, but is against the evidence and the law."); *Phipps v. State,* 22 Tex.Ct.App. 621, 624, 3 S.W. 761, 763 (1886) ("The judgment of conviction for theft rendered in this case in the court below is wholly unsupported by, and is contrary to, the evidence, as sent up to us in the record."); *Montgomery v. State,* 16 S.W. 342 (Tex.Ct.App.1891) ("[B]ecause verdict is against the great preponderance of the evidence, the judgment is reversed, and the cause remanded."); *Lasky v. State,* 18 S.W. 465 (Tex.Ct.App.1892) ("Because the verdict and judgment is not supported by the evidence, but it clearly against the same, the judgment is reversed, and the cause remanded.").

ciency. During its very first term, this Court reversed a conviction for theft of a horse on the basis of factual insufficiency of the evidence, in a cased styled *Foresythe v. State*.[27] There, a certain witness, one Ellard, testified that on the day of the theft he had observed Foresythe in the vicinity of the pasture from which the horse was stolen. The horse was later found in Foresythe's possession. Other witnesses placed Foresythe in a different county on the day of the theft, and it was shown that he had bought the horse from a man named Wats, with a bill of sale and corroborating testimony introduced to that effect. This Court reversed, observing:

> We believe that the verdict of the jury is against the great weight of the testimony; that every apparent inculpatory fact has been met by the testimony for the defendant and made to consist with his innocence, except Ellard's testimony that he saw defendant in the pasture. This we believe to be a mistake, and a very reasonable and common one.[28]

Nothing about this reversal is consistent with what we today regard as a "legal sufficiency" analysis. It was a reversal on factual insufficiency, pure and simple.

Again, in 1912, we reversed a conviction for the crime of seduction on account of insufficiency, in *Murphy v. State*.[29] Although the complainant, a teenage girl, testified that Murphy promised to marry her before she submitted to have intercourse with him, the corroborating testimony placed any promise of marriage at a time *after* the intercourse occurred. For his part, Murphy denied the sexual intercourse even occurred, and the circumstances tended to bear out his denial. We observed that:

> While the jury is the judge of the credibility of the witnesses and the weight to be given the testimony, yet we are authorized to look to see if there is any testimony, or that it is so slight as not to authorize a finding therein against the great preponderance of the testimony.[30]

Although it is arguable that the case could have been reversed on legal insufficiency, *i.e.*, the failure of proof of corroboration statutorily required to convict, the Court nevertheless clearly resorted to the language of factual sufficiency.

In both *Rochetszky v. State*,[31] and *Green v. State*,[32] the prosecution presented eyewitness testimony of dubious reliability. In the former, a prosecution for sale of intoxicating liquor, the defendant "presented unusually strong testimony of alibi."[33] In the latter, a rape case, the complainant had made no outcry until it was discovered that she was pregnant, and her account struck the Court as, "to say the least, slightly out of line."[34] While reversing both cases, we did not resort specifically to language with respect to the *weight* of the evidence. But both cases invoked then-Article 939 of the Code of Criminal Procedure (now Article 44.25) as authority for reversing a conviction "as well upon the law as upon the facts." Indeed, in *Green* we expressly acknowledged that, under the statute, "this court may reverse a judgment upon the facts; we hesitate to interfere with the verdict of the jury in any case, but it is our duty to do so when there

---

**27.** 20 S.W. 371 (Tex.Crim.App.1892).

**28.** *Id.* at 373.

**29.** 65 Tex.Crim. 55, 143 S.W. 616 (1912).

**30.** *Id.* at 62, 143 S.W. at 620.

**31.** 94 Tex.Crim. 423, 251 S.W. 232 (1923).

**32.** 97 Tex.Crim. 52, 260 S.W. 195 (1924).

**33.** 94 Tex.Crim. at 425, 251 S.W. at 233.

**34.** 97 Tex.Crim. at 53, 260 S.W. at 196.

is not sufficient testimony to support it." [35] By the semicolon in this quoted passage, it is obvious that the type of sufficiency review we were referring to was a factual-sufficiency review, *not* a legal sufficiency review. And in *Rochetszky*, we expressly held that a reversal was necessary to avoid an injustice, "where the verdict was manifestly wrong." [36] Of course, this is classic language of factual-sufficiency review, of the type that *Walker* would classify as the third of its "rules of practice." Both opinions survived stout assertions on rehearing that the Court had erred to invade the jury's province by deciding the cases "upon questions of fact[.]" [37]

In *Villareal v. State*, [38] the defendant was convicted of murder and sentenced to death. The evidence was circumstantial as to exactly how the homicide occurred, the witnesses having only heard the offense, but not seen it. The defendant testified that he killed the deceased in self defense, while the deceased was on top of him and choking him. A physician testified for the State that the fatal wound had come from *behind* the deceased, thus contradicting the defendant's account, and supporting the State's case of murder with malice, a capital offense. Nevertheless, this Court reversed the conviction. Invoking Article

848 of the 1925 Code of Criminal Procedure, [39] now Article 44.25, we observed:

[W]e are not to be understood as saying that the evidence may not be strong enough to support a conviction for murder, but that the mind of this court upon an examination of this record is left in such a condition that we are desirous that the evidence should be passed upon again by another jury.

\* \* \*

In reaching our conclusion in this case we have not overlooked the general rule, frequently announced, that the credibility of witnesses and the weight to be given their testimony exclusively rests with the jury and the lower court. Further, that this court will not pass on the sufficiency of the evidence unless there is an entire failure of proof; and that the amount of punishment is the jury's special province. However, we do find that this court has upon occasion applied such rules with a degree of laxity where, under the facts of such cases, it appeared that the conviction was unjust or that the punishment was harsh or unreasonable. [40]

It is hard to imagine a more starkly candid exercise of criminal appellate factual juris-

---

**35.** *Id.* Less than ten years later, in *Stevens v. State*, 121 Tex.Crim. 511, 50 S.W.2d 284 (1932), this Court again found a rape victim's account to be both inherently incredible and uncorroborated, and, relying for authority upon *Green*, and Article 848 of the intervening 1925 Code of Criminal Procedure (now Article 44.25), once again reversed for factual insufficiency. *See also, Ballard v. State*, 136 Tex.Crim. 188, 124 S.W.2d 131 (1939) (evidence insufficient in rape prosecution where child victim's story is inherently suspect, and elderly defendant testifies he is impotent and did not commit the offense); *Lozano v. State*, 154 Tex.Crim. 229, 226 S.W.2d 118 (1950) (evidence of rape insufficient where child victim's story implausible, uncorroborated, there was no outcry, and defendant denied the offense, even though child later found to have

contracted gonorrhea). We do not cite these cases here as exemplars of the appropriate *exercise* of factual-sufficiency review, but only to show that this Court clearly considered it to be within its appellate authority to reverse and remand a conviction for a new trial on that basis.

**36.** 94 Tex.Crim. at 425, 251 S.W. at 233.

**37.** 94 Tex.Crim. at 426, 251 S.W. at 233; 97 Tex.Crim. at 54, 260 S.W. at 196.

**38.** 140 Tex.Crim. 675, 146 S.W.2d 406 (1940).

**39.** *See* note 6, *ante.*

**40.** 140 Tex.Crim. at 680–81, 146 S.W.2d at 409–10.

diction than this. While it may be the case, as has been suggested, that factual sufficiency went into hiding in the late Forties and early Fifties,[41] that does not mean that it never existed.

### E. The Ascendancy of Legal Sufficiency

In 1979, the United States Supreme Court recognized for the first time, in *Jackson v. Virginia,*[42] a minimum federal due process standard for sufficiency of the evidence below which a state court conviction cannot be sustained.[43] The Supreme Court also held that this legal standard for evidentiary sufficiency could be vindicated by the federal courts in federal habeas corpus proceedings.[44] But while *Jackson v. Virginia* does impose upon the states a constitutionally minimum legal sufficiency standard,[45] it does not (and could not, consistent with principles of federalism) prevent the states from applying sufficiency standards that are more solicitous of defendants' rights.[46] Thus, nothing about *Jackson* impacts the legitimacy or fate of factual-sufficiency review in criminal cases in Texas.

Nonetheless, within six months after *Jackson* was decided, this Court announced in *White v. State,*[47] apparently for the first time, that we lack factual-review authority, and therefore "we do not have jurisdiction to pass upon the great weight and preponderance of the evidence[.]"[48] The Court predicated this holding on the so-called "factual conclusivity clause" in Article V, Section 6 of the Texas Constitution.[49] That provision makes the resolution of factual issues by the intermediate courts of appeals conclusive upon discretionary review courts in Texas, such as this Court and the Texas Supreme Court.[50] What we failed to take into account in *White* was the fact that, in 1979, this Court was still exclusively a direct appellate court, not a discretionary review court.[51] For that reason we were mistaken to think that our own factual appellate jurisdiction could be circumscribed by the factual conclusivity clause.

Three years later we mistakenly relied upon *White* to support the observation, in *Combs v. State,*[52] that we lack the authority to make "determinations of sufficiency of the evidence ... passing upon the weight and preponderance of the evidence."[53] Following that observation, we immediately dropped a footnote in which we globally (and equally mistakenly) de-

41. *See Clewis v. State, supra,* at 144 n. 13 (Clinton, J., concurring).

42. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

43. *Id.* at 316–20, 99 S.Ct. 2781.

44. *Id.* at 320–24, 99 S.Ct. 2781.

45. *Acevedo v. State,* 633 S.W.2d 856, 857 (Tex. Crim.App.1982).

46. *Griffin v. State,* 614 S.W.2d 155, 159 (Tex. Crim.App.1981).

47. 591 S.W.2d 851 (Tex.Crim.App.1979).

48. *Id.* at 856.

49. *Id.* at 855.

50. TEX. CONST. art. V, § 6 ("Provided, that the decision of said courts [of appeals] shall be conclusive on all questions of fact brought before them on appeal or error."). *See Bigby v. State, supra,* at 872, citing, inter alia, *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 648 (Tex.1988); *Meraz v. State, supra,* at 155.

51. This Court became a discretionary review court for non-capital criminal cases by virtue of an amendment to Article V, Section 5 of the Texas Constitution, effective September 1, 1981.

52. 643 S.W.2d 709 (Tex.Crim.App.1982).

53. *Id.* at 716.

clared: "We perceive no other standard may be utilized by the Court of Appeals in reviewing criminal convictions other than sufficiency of the evidence [by which is evidently meant *legal* sufficiency] to support the conviction." [54] We then identified the applicable legal sufficiency standard to be that which the Supreme Court had just articulated in *Jackson v. Virginia*.[55] Thus, in the course of three short years we stripped both ourselves (in our capacity as a direct appellate court in capital cases) and the intermediate courts of appeals of the fact jurisdiction we had always previously considered to be inherent in the respective courts' "appellate jurisdiction," as conferred by Article V, Sections 5 and 6 of the Texas Constitution.[56]

## F. Factual Sufficiency Makes a Comeback

In 1994, in *Bigby*, we expressly overruled *White*, and reinvigorated our own appellate jurisdiction to review facts and make factual-sufficiency determinations.[57] The question in *Bigby* was whether this Court had authority to conduct a factual review of a jury's determination of an affirmative defense. In addressing this question, we corrected the mistakes of *White* and *Combs* to hold that criminal appellate courts in Texas have always had factual review jurisdiction, conferred by both the Texas Constitution and by Article 44.25 and its predecessors.[58] The reality is that our factual review jurisdiction had never disappeared. It was merely temporarily obscured by *White* and *Combs*. Neither of those opinions *ever* disputed (or even referenced) our inherent constitutional fact jurisdiction, or purported to overrule the plethora of previous cases recognizing our constitutional and statutory authority to conduct fact reviews.[59]

■ *Clewis* simply continued the restoration of appellate factual jurisdiction in

---

**54.** *Id.* at 716 n. 1.

**55.** *Id.* at 716–17.

**56.** Ironically, by the time we decided *Combs* in 1982, we had become a discretionary review court for all non-capital criminal cases, and in *Combs* itself we reviewed a lower court of appeals opinion in that capacity. Thus, any review on our part of a *factual*-sufficiency claim that the court of appeals might have passed upon would have been barred by the factual conclusivity clause of Article V, Section 6. *See* note 50, *ante*. But we were simply mistaken in *Combs* to rely upon *White* to suggest that this Court lacked factual review authority in our capacity as a direct appeals court, and equally mistaken to hold that the court of appeals also lacked jurisdiction to review factual sufficiency. *See Clewis v. State*, *supra*, at 144–46 (Clinton, J., concurring). We were correct to hold, however, that the factual conclusivity clause does not bar our review of a *legal* sufficiency claim in a petition for discretionary review.

**57.** 892 S.W.2d at 874–75 ("Clearly under either the statute [Article 44.25 of the Code of Criminal Procedure] or the constitution [*i.e.*, factual review which is inherent in our constitutionally-conferred appellate jurisdiction] we are empowered to review a case both upon the law and the facts. Therefore, *White v. State*, 591 S.W.2d 851 (Tex.Crim.App.1979) is expressly overruled, and any reliance on that case by our Court in *Meraz* was misplaced.")

**58.** Of course we also recognized, in deference to the factual conclusivity clause of Article V, Section 6, that this Court's factual review jurisdiction was limited to its capacity as a direct criminal appellate court, in capital murder cases. *Id.* at 875.

**59.** In 1981 the Legislature amended Article 1820 of the Revised Civil Statutes of Texas to read: "The judgments of the Courts of Appeals in civil cases shall be conclusive in all cases on the facts of the case." *See* Acts 1981, 67th Leg., ch. 291, p. 781, §§ 39, 40, eff. Sept. 1, 1981. This statute was repealed in 1985, but it was re-codified in substance as current Section 22.225(a) of the Government Code, which now reads: "A judgment of a court of appeals is conclusive on the facts of the case in all civil cases." TEX. GOV'T CODE,

criminal cases by expressly holding that the courts of appeals may review the evidence for factual sufficiency *as well as* legal sufficiency—effectively overruling the footnote in *Combs*, albeit *sub silentio*.[60] And we finished the job in *Jones v. State*,[61] when we extended our own fact jurisdiction to permit a review of the factual sufficiency of the evidence to establish the *guilt* of the accused in capital murder cases, and not just to review whether the jury's rejection of an affirmative defense was against the great weight and preponderance of the evidence, as in *Bigby*. Thus, the law as it stands today in Texas is that, in the direct appeal of a criminal case, the courts of appeals (and this Court, in the direct appeal of capital murder cases) have the statutory and constitutional authority to entertain a claim of factual insufficiency and to reverse the conviction and remand the cause for a new trial in the event they find the evidence to be, indeed, factually insufficient.

## III. FACTUAL–SUFFICIENCY REVIEW SINCE *CLEWIS*

The basic ground rules for post-*Clewis* factual-sufficiency review were well articulated in *Cain v. State*.[62] First, the appellate court should be mindful that a jury has already passed on the facts, and convicted, and that the court should never order a new trial simply because it disagrees with the verdict, but only where it seems to the court to represent a manifest injustice, though supported by legally sufficient evidence.[63] Second, the appellate court should support its judgment that a manifest injustice has occurred by explaining in exactly what way the State's evidence, while legally sufficient, is nevertheless too weak to withstand scrutiny, or in exactly what way it perceives the conflicting evidence greatly to preponderate against conviction.[64] Third, although viewing *all* the evidence, as it would in a legal sufficiency analysis, the appellate court should review that evidence, not in the light most favorable to the verdict, but in a neutral light.[65]

The only substantive adjustments to these basic ground rules have come in two cases, *Johnson v. State*,[66] and *Zuniga v. State*.[67] In *Johnson*, the Court broke down factual-sufficiency analysis into two prongs. The first prong asks whether the evidence introduced to support the verdict, though legally sufficient, is nevertheless "so weak" that the jury's verdict seems

§ 22.225(a). The fact that this provision does not mention criminal cases does not mean the courts of appeals lack fact jurisdiction in criminal appeals. In the very same legislation in which the Legislature amended Article 1820 in 1981, it also amended Article 44.25 of the Code of Criminal Procedure to expressly confer fact jurisdiction on the courts of appeals in criminal cases. *See* Acts 1981, 67th Leg., ch. 291, p. 817, § 134, eff. Sept. 1, 1981. (Of course, at the same time, Article 5, Section 6 of the Texas Constitution was amended to make all factual determinations in the courts of appeals conclusive. *See* Acts 1979, 66th Leg., S.J.R. No. 36, p. 3224, adopted Nov. 4, 1980, eff. Sept. 1, 1981. This provision effectively limits this Court's factual-review jurisdiction to capital cases, in which we are the court on direct appeal.)

60. *Combs* was earlier overruled to the extent that it seemed to equate a no-evidence standard with the *Jackson v. Virginia* standard. *Butler v. State*, 769 S.W.2d 234, 239 (Tex. Crim.App.1989).

61. 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

62. 958 S.W.2d 404 (Tex.Crim.App.1997).

63. *Id.* at 407.

64. *Ibid.*

65. *Id.* at 408.

66. 23 S.W.3d 1 (Tex.Crim.App.2000).

67. 144 S.W.3d 477 (Tex.Crim.App.2004).

"clearly wrong and manifestly unjust[.]" [68] The second prong asks whether, considering conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence.[69] This adjustment simply brings the *Clewis* standard in line with civil practice, and with factual-sufficiency review in criminal cases from the earliest days in Texas. After all, the *Johnson* adjustment, in its essentials, merely reflects the first and fourth "rules of practice" set out more than a hundred and twenty years ago in *Walker*.

## IV. *ZUNIGA*

The far more radical adjustment was made in *Zuniga*. *Zuniga* represents an attempt, not to alter the factual-sufficiency standard of previous cases, but to re-articulate it in terms specific to the particular level of confidence that due process requires in criminal cases, *viz:* proof beyond a reasonable doubt. Our express intention was to eschew any formulation of the standard that would incorporate language of "preponderance of the evidence," since that is a lesser burden of proof, not applicable in criminal cases. Thus we said:

> There is only one question to be answered in a factual sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? [70]

Thus articulated, the standard for factual sufficiency seems barely distinguishable from a *Jackson v. Virginia* legal sufficiency analysis. The only apparent difference is that the appellate court, using the *Zuniga* standard, is to measure the rationality of the jury's verdict by viewing all of the evidence from a "neutral" standpoint, rather than "in the light most favorable to the verdict." That is to say, it need not indulge the presumption that is built-in to a legal sufficiency analysis that the jury, "faced with a record of historical facts that supports conflicting inferences ... resolved such conflicts in favor of prosecution[.]" [71]

Nevertheless, the distinction is a real one, and might have served as an acceptable reformulation of the factual-sufficiency standard, standing alone. But we apparently created a problem when we elaborated on our reformulation, first in the following vein:

> However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand.[72]

This reformulation of the standard begins to make sense only when one remembers that it is not a *legal* sufficiency standard. In other words, we are not now asking whether the *jury* could rationally have found the defendant guilty beyond a reasonable doubt, having presumably resolved all conflicts or ambiguities in the evidence in favor of the prosecution. (Presumably the jury *has*, or in most cases the appellate

---

68. 23 S.W.3d at 11.

69. *Ibid.*

70. 144 S.W.3d at 484.

71. *Jackson v. Virginia, supra*, at 326, 99 S.Ct. 2781.

72. *Zuniga, supra*, at 484–85.

court would not have reached the issue of *factual* sufficiency, having acquitted the defendant.) The fact is that rational people can disagree whether even legally sufficient evidence is persuasive to a level of confidence beyond a reasonable doubt. "That rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable doubt standard. Jury verdicts finding guilt beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt[.]" [73] This means that an appellate court can both affirm the legal sufficiency of the evidence, and at the same time harbor its own, admittedly subjective, reasonable doubt about the accuracy of the jury's verdict.

Thus, when the Court in *Zuniga* referred to evidence that is factually insufficient because it is "too weak to support a finding of guilt beyond a reasonable doubt[,]" we must have meant that the evidence would not satisfy the appellate court's *own* threshold of proof beyond a reasonable doubt. And when the Court said that "the contrary evidence may be strong enough that the beyond a reasonable doubt standard could not have been met," we must have meant that the weight and credibility of the exculpating evidence is so great that the appellate court *itself* feels compelled to harbor a reasonable doubt as to the defendant's guilt. This understanding is problematic, however, because it smacks of an appellate court simply opting to "disagree" with the jury's verdict—something we have never before tolerated even in the "factual sufficiency" context. That an appellate court would have acquitted a defendant on the same facts that convinced a rational jury to con-

vict has not ever, by itself, met our criteria of a "manifest injustice."

The problem is exacerbated by what our *Zuniga* opinion says next:

This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.[74]

This re-re-articulation of the standard is particularly troublesome. The first sentence (upon which the court of appeals relied in the instant case) suggests that evidence legally sufficient to convict may still be factually *in*sufficient if it merely "preponderates" in favor of guilt, rather than establishing guilt beyond a reasonable doubt. Thus, even if, viewing all of the evidence in the light most favorable to the verdict, the appellate court concludes that a rational jury could find guilt to the requisite level of confidence beyond-a-reasonable-doubt, that same appellate court should order a new trial if, viewing that same evidence neutrally, it is *subjectively* convinced by no more than a preponderance of the evidence. The second sentence suggests that even when the State's evidence of guilt is *more* weighty and *more* credible than the defendant's contrary evidence, and therefore "preponderates" in favor of guilt, an appellate court could find that it does not meet its *own* threshold level of confidence beyond a reasonable doubt, and reverse and remand on that basis.

■ It is in the very nature of a factual-sufficiency review that it authorizes an ap-

**73.** *Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).

**74.** 144 S.W.3d at 485.

pellate court, albeit to a very limited degree, to act in the capacity of a so-called "thirteenth juror." Indeed, it is this characteristic of a factual-sufficiency review that justifies the conclusion that a reversal on the basis of factually insufficient evidence has no jeopardy consequences.[75] But prior to *Zuniga*, as our review of the origins and history of factual-sufficiency review has demonstrated, we always required a high level of skepticism about the jury's verdict in order to justify granting a new trial. Any holding that a criminal appellate court can reverse and remand for a new trial even when the evidence "preponderates" in favor of a conviction is inconsistent with that historically required high level of skepticism.

We therefore disavow such language in *Zuniga* and reiterate that it is not enough that the appellate court harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict. We have always held that an appellate court must first be able to say, with some objective basis in the record, that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial. We have never, at least until *Zuniga*, in-

terpreted the factual review jurisdiction of criminal appellate courts to include the ability to overturn a jury verdict and remand for a new trial when the greater weight and preponderance of the evidence actually favors *conviction*! To the extent that *Zuniga* may be to read to allow such a reversal, it was flawed at the outset and has a clear potential to cause far more reversals for factual insufficiency than was ever contemplated by either *Clewis* or the many cases within the last 125 years that have inquired into factual sufficiency.[76] It is therefore, to that extent, overruled.

## CONCLUSION

■ Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for a reconsideration of the appellant's factual-sufficiency claim in light of this opinion.

HERVEY, J., filed a dissenting opinion, in which KELLER, P.J., and KEASLER and COCHRAN, JJ., joined.

COCHRAN, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER and HERVEY, JJ., joined.

HERVEY, J., dissenting in which KELLER, PJ., KEASLER and COCHRAN, JJ., joined.

In another decision meant to "clarify" *Clewis*,[1] the Court overrules a less than three year-old, 7–judge majority opinion in *Zuniga*,[2] which was also meant to "clarify" *Clewis*. The reader should notice that, in addition to overruling *Zuniga*, the Court's opinion also overrules a significant portion

---

**75.** See *Meraz v. State, supra,* at 156, *citing Tibbs v. Florida,* 457 U.S. 31, 42–3, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**76.** See *Hammock v. State,* 46 S.W.3d 889, 892–93 (Tex.Crim.App.2001).

**1.** See *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr. App.1996).

**2.** See *Zuniga v. State,* 144 S.W.3d 477 (Tex.Cr. App.2004).

of *Clewis* and a significant portion of *Cain*,[3] which was another decision meant to "clarify" *Clewis*.

The Court's opinion disavows that part of *Clewis* stating that Texas courts apply the *Jackson v. Virginia*[4] legal sufficiency standard "in such a way that the only evidence a reviewing court considers is the evidence that supports the verdict." [5] *See Watson v. State*, 204 S.W.3d at 414 (*Jackson v. Virginia* legal sufficiency standard requires a review of "*all* the evidence") (emphasis in original). This misstatement of the *Jackson v. Virginia* standard by *Clewis* formed a very significant portion of *Clewis'* rationale that a factual sufficiency standard was needed to overturn convictions that are "unjust" under *Jackson v. Virginia* with *Clewis'* 40–nun hypothetical [6] used to illustrate such an "unjust"

conviction. This, of course, requires the reader to accept that a verdict that is rational under the beyond a reasonable doubt standard under *Jackson v. Virginia* can at the same time be "clearly wrong" or "manifestly unjust." *See Watson*, Op. at 417.[7]

The Court's opinion also disavows a significant portion of *Cain*. With the Court recognizing that the *Jackson v. Virginia* standard requires an appellate court to consider **all** the evidence, this means that the only difference between a *Jackson v. Virginia* legal sufficiency review and a *Clewis* factual sufficiency review is that the former requires the appellate court to defer to the jury's credibility and weight determinations [8] while the latter permits the appellate court to disagree with the jury's credibility and weight determina-

---

3. *See Cain v. State*, 958 S.W.2d 404 (Tex.Cr. App.1997).

4. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

5. *See Clewis*, 922 S.W.2d at 132 n. 10.

6. *See Clewis*, 922 S.W.2d at 133 n. 12.

7. The *Jackson v. Virginia* standard has two components. It requires the reviewing court to view the evidence in the light most favorable to the verdict, which means that the reviewing court defers to the jury's credibility and weight determinations apparently because the jury, having seen the witnesses testify, is in the best position to make these calls. The *Jackson v. Virginia* standard then requires the reviewing court to determine whether the jury's verdict is "rational" under the beyond a reasonable doubt standard. This "rationality" component prevents an "unjust" conviction and accomplishes essentially what *Clewis* seeks to accomplish. *Clewis'* 40–nun hypothetical illustrates this. Under the *Jackson v. Virginia* standard, the reviewing court would view the evidence in the light most favorable to the verdict and defer to the jury's determination to believe the impeached witness and to disregard the testimony of the 40 nuns.

But, such a verdict cannot be considered rational under the beyond a reasonable doubt standard. *See Clewis*, 922 S.W.2d at 156 n. 7 (McCormick, P.J., dissenting).

Another illustration of this is this Court's decision in *Carmouche v. State*, 10 S.W.3d 323 (Tex.Cr.App.2000). In *Carmouche*, this Court reviewed an intermediate appellate court's decision reviewing a trial court's ruling denying a motion to suppress. The reviewing court was required to view the evidence in the light most favorable to the trial court's ruling and there was testimony from a police officer that supported the trial court's ruling. *See Carmouche*, 10 S.W.3d at 332–33. But, this Court overturned the lower courts' rulings because a videotape of the event contradicted the testimony of the police officer. *See id.* *Carmouche* illustrates how a reviewing court can overturn a lower court's ruling by considering **all** the evidence in the light most favorable to the ruling even when there is some evidence to support the ruling. *See also Johnson v. State*, 23 S.W.3d 1, 15 (Tex.Cr.App. 2000) (McCormick, P.J., dissenting) (hypothetical demonstrating proper application of *Jackson v. Virginia* standard).

8. This is also stated as viewing the evidence in the light most favorable to the verdict.

tions.[9]

But, authorizing appellate courts to disagree with a jury's credibility and weight determinations via *Clewis'* factual sufficiency review is inconsistent with Articles 38.04 and 36.13, TEX.CODE CRIM. PROC., which unambiguously, without limitation, make the jury the **exclusive** judges of the credibility and weight of the evidence. The Court's opinion, however, states that these Code provisions do not apply to appellate review of evidentiary sufficiency questions because "their placement in Chapters 36 and 38 of the Code, which govern [sic] trial practice and procedure" make it apparent that these provisions are "meant merely to allocate the fact-finding function at the trial level and do not purport to affect appellate review." *See Watson*, Op. at 409; *accord Clewis*, 922 S.W.2d at 134–35 (import of these Code provisions is "to distinguish the role of the jury from

the role of the judge at trial").[10] But, this Court's decision in *Cain* made no such distinction, and, *Cain* expressly relied on these Code provisions to state, contrary to what *Clewis* originally stated, that "the **appellate court** must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice." *See Cain*, 958 S.W.2d at 407 (emphasis supplied).[11] In stating that these Code provisions do not apply to the appellate process, the Court's opinion overrules a significant portion of *Cain*.[12]

Notwithstanding the foregoing, the issue of whether Texas appellate courts have factual sufficiency jurisdiction in criminal cases is a matter of legislative intent subject to a *Boykin* analysis. This requires an interpretation of Article 44.25, TEX. CODE CRIM. PROC., against the backdrop of

**9.** This is also stated as viewing the evidence in a neutral light.

**10.** Whether these Code provisions apply to appellate review of evidentiary sufficiency questions is a matter of legislative intent which requires an appellate court to give effect to the unambiguous language of these Code provisions unless doing so would produce an absurd result. *See Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex.Cr.App.1991). Assuming that the language and particularly the placement of these Code provisions supports the Court's interpretation of them, it arguably is an absurd result that a trial court, which observed the witnesses testify and their demeanor, must defer to a jury's credibility and weight determinations while an appellate court may disagree with these determinations on a cold record. In addition, under the reasoning of the Court's opinion, a trial court arguably cannot grant a new trial since the provisions for granting a new trial are placed in the appellate rules of procedure and not in the Code provisions "which govern trial practice and procedure." *See* TEX.R.APP. PROC. 21.3.

**11.** This Court in *Cain*, 958 S.W.2d at 407, stated:

First is the principle of deference to jury findings. The Code of Criminal Procedure establishes that the jury is the judge of the facts. [Citing Articles 36.13, 38.04] [Footnotes omitted]. In *Clewis* we explained that "[a]ppellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result; ... those courts 'are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable.' " *Clewis*, 922 S.W.2d at 135 [citation omitted]. "A court of appeals may not reverse a jury's decision simply because it disagrees with the result; the appellate court must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice."

**12.** In summary then, in 1996, this Court stated that these Code provisions do not apply to the appellate process (*Clewis*, 922 S.W.2d at 135); but in 1997, this Court stated that they do apply to the appellate process (*Cain*, 958 S.W.2d at 407); and in 2006, this Court states that they do not apply to the appellate process (*Watson*, Op. at 409).

the legal landscape as it existed in 1981 when the Legislature amended Article 44.25 to its current form and granted the intermediate appellate courts criminal jurisdiction. When this occurred in 1981, the Supreme Court had recently decided *Burks/Greene*,[13] which provided the remedy of an appellate acquittal on evidentiary insufficiency grounds, and *Jackson v. Virginia*, which sets out the now familiar due process standard for reviewing evidentiary sufficiency.

Prior to 1981, Article 44.25 and its statutory predecessors provided that appellate criminal courts may reverse a conviction "upon the law as upon the facts."[14] These pre–1981 statutory predecessors to current Article 44.25 also authorized the appellate remedy of a remand for a new trial when a conviction was reversed because it was contrary to the weight of the evidence.[15] But, it is very significant that the 1981 legislative amendments to Article 44.25 deleted this language authorizing the appellate remedy of a new trial when a conviction was reversed because it was contrary to the weight of the evidence. *See* Footnotes 13, 14. The effect of these 1981 legislative amendments to Article 44.25 deleting this language was to withdraw an

appellate criminal court's jurisdiction to provide the remedy of a remand for a new trial when a conviction was reversed because it was contrary to the weight of the evidence.[16]

It, therefore, seems clear that the Legislature very carefully insured that there would be no factual sufficiency jurisdiction in criminal cases when it amended Article 44.25 to its current form in 1981.[17] It seems equally clear that the Legislature intended that appellate criminal courts apply only the evidentiary sufficiency standard set out in *Jackson v. Virginia* and provide only the appellate remedy of an acquittal set out in *Burks/Greene* upon a determination that the evidence is insufficient to support the conviction. And, as the Court's opinion seems to recognize, Texas appellate criminal courts applied only the *Jackson v. Virginia* standard after 1981 until this Court some years later "rediscovered factual sufficiency, and resurrected it from a brief, court-imposed dormancy." *See Watson*, Op. at 405.

Finally, while purporting to retain a [factual] sufficiency standard that is "more solicitous of defendants' rights,"[18] the Court's retention of this standard is actual-

13. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

14. *See Bigby v. State*, 892 S.W.2d 864, 874–75 n. 5 (Tex.Cr.App.1994).

15. *See Bigby*, 892 S.W.2d at 874–75 n. 5.

16. The Court's opinion seems to state that the Legislature conferred factual sufficiency jurisdiction by withdrawing an appellate court's authority to remand for a new trial when a conviction was contrary to the weight of the evidence. *See Watson*, Op. at 413–14 n. 59. I disagree. I believe the issue is not whether the 1981 legislative amendments to Article 44.25 somehow conferred factual sufficiency jurisdiction, but whether these amendments

withdrew factual sufficiency jurisdiction, if it ever existed which the Court's opinion claims it did prior to 1981.

17. More support for this is found in Section 22.225(a), Tex. Gov't Code, which makes a judgment of the court of appeals "conclusive on the facts of the case in all **civil** cases." (Emphasis supplied). *See also Watson*, Op. at 413–14 n. 59 (discussing legislative history of Section 22.225(a)). If Texas appellate criminal courts have factual sufficiency jurisdiction in criminal cases, then the Legislature would have made their judgments conclusive on the facts in criminal cases too.

18. A standard that is "more solicitous of defendants' rights" is necessarily less solicitous of the rights or interests of non-defendants.

ly less solicitous of defendants' rights. *Clewis'* 40–nun hypothetical illustrates this as well. According to *Clewis*, this 40–nun hypothetical illustrates a legally sufficient but factually insufficient conviction. *See Clewis*, 922 S.W.2d at 133 n. 12. This means that the State can retry this hypothetical defendant, and the appellate court would probably have to affirm this hypothetical defendant's conviction the second time around on the same evidence as that presented at his first trial. *See Tibbs v. Florida*, 457 U.S. 31, 43 n. 18, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). But, this hypothetical defendant would have been entitled to an appellate acquittal the first time around under a proper application of *Jackson v. Virginia.*

With these comments, I join Judge Cochran's dissent.

COCHRAN, J., dissenting in which KELLER, P.J., and KEASLER and HERVEY, JJ., joined.

I respectfully dissent. For the reasons set out below, I believe that further efforts to clarify, refine, or revise the *Clewis* standard are as unlikely to succeed as our previous attempts. The *Clewis* factual-sufficiency review was a well-intentioned but ultimately unworkable effort to incorporate civil standards of review on elements of a crime that must be proven beyond a reasonable doubt. I would overrule *Clewis* and return to the single standard of review for sufficiency of the evidence in a criminal case as set out by the United States Supreme Court in *Jackson v. Virginia.*[1] Therefore, I would reverse the court of appeals and uphold the trial court's judgment because the evidence supporting appellant's conviction was legally sufficient under the *Jackson* standard.

## I.

Appellant was charged with burglary by entering Jennifer Romo's home without consent and attempting to commit or committing sexual assault. The evidence at trial showed that, on a warm June afternoon, Jennifer Romo was at her kitchen screen door, watching her two pre-school children play in the yard outside her Waco apartment, when she noticed appellant jogging across the parking lot toward her. Jennifer turned around and went back into her kitchen. When she turned around again, appellant was standing at her screen door. He stuck his head and body halfway through the door and put his foot in the doorway. Appellant tried to have a conversation with Jennifer and kept saying that he knew her. Appellant was wearing gym shorts, and Jennifer could see that he had an erection. Finally she told him to leave, and he did.

Jennifer went into her living room, but a few seconds later she heard the screen door open again. She turned around and saw appellant standing inside her kitchen. She was "extremely" angry and a little bit scared. She started forward, screaming at him to get out of her house, but he didn't move. "He just stood there, and he looked at me, and he just dropped his shorts, and they just fell." His penis was sticking out. Jennifer turned around and grabbed a butcher knife. She testified, "I pointed it at him, and I told him that he better leave my house, that he better get out. . . . He just looked at me, and he grabbed the end of my knife." Jennifer twisted the knife to get it out of his hands. Finally, he let go of it. Jennifer said, "I guess he thought I meant business because he picked his shorts up and he walked out of the house." Jennifer thought that the reason appellant

---

1. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

left was because he thought she was going to stab him.

Jennifer watched as he walked back across the parking lot and sat down on a porch. Jennifer called her father, who told her to call the police. When Officer Arnold arrived a few minutes later, appellant was still sitting on the porch. After talking with Jennifer and taking her statement, Officer Arnold arrested appellant, who gave him a false name. Officer Arnold formed the opinion that appellant was trying to cover up his culpability.

The defense presented no evidence, but appellant made a motion for instructed verdict. He argued that the State failed to offer sufficient evidence to prove appellant "attempted to commit or actually committed a sexual assault[.]" The State conceded that there was no evidence that appellant actually committed sexual assault, but argued that

> there are plenty of things that he did that go to his attempt to commit a sexual assault. He pulled down his pants. He exposed his erect penis, and, critically, he grabbed for a knife when she had grabbed a knife to protect herself. He didn't turn and run away. He put his hand out, and he grabbed that knife, and that tells me that his intent was something more than just to expose himself to her. . . . There was a reason why he came into her house. He pulled his pants down. He was ready to do something to her. You heard her testify that she had one second—in one second, she had that knife in her hand. Just because he never got the opportunity to grab her or pull her clothes off, attempt to sexually assault her any further, doesn't mean that the pulling the pants

down and the grabbing of the knife were not an attempt to sexually assault her. And that is some evidence. It's enough evidence that the jury could find beyond a reasonable doubt that he did attempt that offense.

The trial judge denied the motion for instructed verdict, and the jury convicted appellant of burglary and sentenced him to thirteen years' imprisonment.

On appeal, appellant argued that the evidence was both legally and factually insufficient. In a published opinion, a majority of the court of appeals held that, although the evidence was legally sufficient, it was factually insufficient because "the evidence which tends to support the verdict 'preponderates' in favor of conviction but still [is] insufficient to prove the elements of the crime beyond a reasonable doubt."[2] Chief Justice Gray dissented, setting out the inculpatory evidence and concluding, "I guess my response to the majority opinion—'You have got to be kidding'—makes me irrational, along with 12 jurors and the trial court."[3]

## II.

Should a Texas jury's "guilty" verdict be subjected to two distinct "sufficiency of the evidence" hurdles on appellate review? The first hurdle, *Jackson,* is the constitutionally required review for legal sufficiency of the evidence.[4] The second hurdle was created by this Court in *Clewis* and draws from Texas civil standards of review. Since *Clewis* was decided ten years ago, we have made frequent, but largely futile, attempts to clarify the differences between these two theoretically distinct sufficiency hurdles in criminal cases. It is

---

2. *Watson v. State,* 160 S.W.3d 627, 630 (Tex. App.-Waco 2005) (quoting *Zuniga v. State,* 144 S.W.3d 477, 485 (Tex.Crim.App.2004)) (internal quotations omitted).

3. *Id.* at 631 (Gray, C.J., dissenting).

4. *See Jackson,* 443 U.S. at 318, 99 S.Ct. 2781.

crucial to distinguish clearly the constitutionally mandated hurdle of legal sufficiency from the judicially created hurdle of factual sufficiency. The result of finding one rather than the other insufficient is dramatically different. If the evidence is legally insufficient, the defendant is entitled to an acquittal by the appellate court, and he cannot be retried. If the evidence is factually insufficient, he is entitled only to a second trial in which the State may produce additional evidence to satisfy whatever gaps or conflicts a court of appeals found in the first trial.[5] It is essential that evidentiary hurdles like *Jackson* and *Clewis* be easily distinguishable. If they are not easily and logically distinguishable, allowing both to apply muddles the law and violates the cardinal principle of appellate justice—the "uniform and coherent enunciation and application of the law."[6]

In *Jackson v. Virginia*, the Supreme Court of the United States held that constitutional due process requires reviewing courts to "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."[7] In assessing the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8] The Supreme Court explained:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[9]

Under *Jackson*, appellate courts review a claim attacking the sufficiency of evidence in a criminal case to determine whether the State produced enough evidence to support a "rational" factfinder's guilty verdict beyond a reasonable doubt. A "rational" verdict is one that is "based on reason"; it is "not foolish or silly"; it is "sensible."[10] It is a verdict "based on, or guided by reason, principle, fairness, [and] logic[.]"[11] To ensure that the original factfinder's weight and credibility decisions are given sufficient deference, the Supreme Court requires reviewing courts to view all of the evidence in the light most favorable to the prosecution.[12]

---

5. As a practical matter, an appellate reversal for factually insufficient evidence may result in the State offering a particularly advantageous plea bargain or dismissing the case because, after years in the appellate orbit, the witnesses are unavailable, judicial resources are limited, and trial dockets are crowded. Whether either of these results serves the public interest is doubtful.

6. PAUL D. CARRINGTON ET AL., JUSTICE ON APPEAL 11 (1976).

7. *Jackson*, 443 U.S. at 318, 99 S.Ct. 2781.

8. *Id.* at 319, 99 S.Ct. 2781 (emphasis in original; citations omitted).

9. *Id.* (emphasis in original).

10. WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY UNABRIDGED 1496 (2d ed.1983).

11. MERRIAM-WEBSTER'S DICTIONARY OF LAW (1996) (http://dictionary.lp.findlaw.com/scripts/search.pl?co=dictionary.lp.findlaw.com&s=rational).

12. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 (noting that this criterion "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law").

In *Clewis*, this Court authorized Texas courts of appeals to conduct a second review of the evidence: a *factual*-sufficiency review under the following test:

> In conducting a factual sufficiency review, the court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution' . . . [and] sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." [13]

On its face, this test differs from the *Jackson* standard in two ways: (1) the evidence is not viewed in the light most favorable to the State (which is simply a proxy for deference to the factfinder, either judge or jury); and (2) the verdict, even if rational and reasonable under *Jackson*, is examined to see if it is so contrary to the overwhelming weight of the evidence, that it is manifestly wrong and unjust. The issues that have bedeviled this Court and the courts of appeals for the past ten years include: (1) what, precisely, do those two prongs mean; (2) how does the *Clewis* standard differ from the *Jackson* standard; and (3) to what extent is the court of appeals statutorily or constitutionally empowered to act as a thirteenth (and in absentia) juror? More broadly, do these standards differ sufficiently to require such a dramatic difference in result—acquittal versus retrial? And finally, as a matter of public policy, what is the injustice or legal problem that a factual-sufficiency review is intended to solve? Does it do so satisfactorily? I do not think so.

To adequately address these issues, however, one must examine the historical development of both Texas and federal appellate review standards for the sufficiency of evidence in criminal cases.

## A. Origins of Texas Appellate Review of the Sufficiency of the Evidence.

Even in the days of the Texas Republic, the Texas Supreme Court could review the sufficiency of evidence to support a criminal conviction. The earliest known case is *Republic of Texas v. Smith*,[14] an 1841 decision, in which the Supreme Court of Texas addressed the threshold question of whether a criminal defendant had a right to appeal "the facts" as well as "the law." [15] Finding that it had jurisdiction "to have the facts as well as the law, at [the defendant's] election, opened for re-examination," [16] the supreme court reviewed the defendant's claim that, although he was charged with dealing faro [17] in Austin, venue was improper in Travis County because, at the time of the offense, Austin was in the territorial jurisdiction of Bastrop County.[18] The supreme court said that it would "consider the decision of the district judge, with an eye both to the law and the facts as shown by the record." [19] It rejected the defendant's venue claim.[20]

---

13. 922 S.W.2d 126, 134 (Tex.Crim.App.1996) (quoting *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.-Austin 1992, pet. ref'd)).

14. Dallam 407 (1841).

15. *Id.* at 407–10 (concluding that "We believe that such a right is in accordance with the genius and spirit of our institutions, and secured to him by the constitution and laws of this country").

16. *Id.* at 411.

17. The card game faro "enjoyed great popularity during the . . . 19th Century in the United States . . . where it was practiced by 'Faro dealers' such as the infamous Doc Holliday." WIKIPEDIA, THE FREE ENCYCLOPEDIA, Faro, at http://en.wikipedia.org/wiki/faro_card-game. (last visited September 1, 2006).

18. *Smith*, Dallam at 407, 411.

19. *Id.* at 411.

20. The court reasoned that, if the defendant's argument were accepted, it "would protect

The next important decision dealing with "the facts" in a criminal case, was *Bishop v. State*,[21] decided in 1875. A jury convicted Bishop of stealing a cow from Mrs. Lizzie Hill. There was conflicting evidence on whether he "appropriated" the cow in good faith by purchasing it from a man named Keel, or he fraudulently took it from Mrs. Hill.[22] The jury charge, however, omitted the statutory word "appropriation"[23] and its definition. Given the conflicting evidence on the sole disputed fact issue, this was a material error.[24] The trial judge committed a second material error when he told the jury that, in civil cases, "the jury must believe all evidence given before them until the same is impeached, and in a criminal case they may discard from their consideration any part of the whole of the testimony that they may regard as improbable."[25] The supreme court condemned that statement as infringing upon the jury's right to make its own credibility decisions, and it noted that "many improbable things actually do occur, and when detailed in evidence as part of any matter under investigation they are not to be discarded from the consideration of the jury because they are improbable."[26] It is the jury, not the trial judge (and not the appellate court), that makes credibility decisions.[27]

These two cases have been cited as supporting the view that Texas appellate courts are authorized to conduct a review of the factual sufficiency of evidence in criminal cases.[28] They provide no such support. Instead, *Smith* explained that the Texas Supreme Court had jurisdiction over an "appeal" from a criminal case, including both the facts and the law, not merely over a "writ of error" which, under the early English common law, was a for-

from just punishment any offender, however flagrant his offense, if committed before the passage of the act dividing the county" because almost all former counties in Texas were re-divided and renamed after the Republic of Texas was created. *Id.*

But what, we will ask, was the intention of the legislature in passing the act creating the county of Travis? Was it to protect the guilty from punishment? Was it to open the prison doors to them that were bound, without making any compensation to an injured community and the violated laws? Was it to encourage crime and insult the majesty of the constitution? No! It had other motives and other intentions in view. Of this we are certain. And what they intended is binding upon us in expounding the law.

*Id.* at 411–12. So, although the supreme court considered "the facts" of the case, the issue was decided upon a legal principle—a defendant may be tried in a newly-created county in which he had committed the offense, regardless of what that county was called at the time of the offense.

21. 43 Tex. 390 (1875).

22. *Id.* at 391–92.

23. The charge simply said that the defendant was charged " 'with the theft of a certain cow, the property of Mrs. Lizzie Hill ...' " *Id.* at 392–93, 402–03.

24. *Id.* at 398–403.

25. *Id.* at 394.

26. *Id.*

27. Indeed, in *Bishop*, the supreme court was explicit:

"the jury are the exclusive judges of the facts in every criminal cause." ... Being made the exclusive judges of the facts, the jurors, in contemplation of the law, are deemed to have the capacity to exercise those processes of thought and powers of combination which are sufficient to understand, without the aid of the judge, their relations and relative importance in arriving at a conclusion.

*Id.* at 397 (citations omitted).

28. *See Clewis*, 922 S.W.2d at 130 (citing *Smith* and *Bishop* ); *Bigby v. State*, 892 S.W.2d 864, 872 (Tex.Crim.App.1994) (quoting *Smith* and *Bishop* ).

mal point of law that accepted the "facts" uncritically.[29] And *Bishop* emphasized the importance of the jury's factfinding role once it has been properly instructed on the applicable law. These cases hold that appellate courts may re-examine the facts—the evidence in the trial record—in addressing the legal issues.

In 1875, the supreme court did review the sufficiency of evidence in *Tollett v. State*,[30] and, in 1877, the newly created court of appeals did so in *Loza v. State*.[31] In both cases, the reviewing court held that there was not "legal and competent evidence" establishing an element of the offense: in *Tollett,* the prosecution failed to prove that the defendant participated in a theft from a storehouse;[32] in *Loza,* the prosecution failed to prove that the defendant had the intent to permanently deprive the owner of his gelding.[33] The courts used a single sufficiency-of-the-evidence standard:

> whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence as would render it safe to allow the verdict to stand and become a precedent in the adjudication of offenses under the law.

The performance of this duty on the part of the court is the exercise of a legal discretion and judgment as to what facts should be sufficient to rebut the legal presumption of innocence to which every one is entitled who is put upon his trial for an offense.[34]

This sounds very much like the *Jackson* standard appellate courts now use for assessing legal sufficiency of the evidence. And it was the only standard used. There were not two distinct "sufficiency of the evidence" hurdles in the early Texas years. But, like *Smith* and *Bishop*, both *Tollett* and *Loza* have been cited as supporting the view that early Texas courts were authorized to consider "factual"' as well as "legal" sufficiency of the evidence in a criminal case.[35] In fact, *Smith, Bishop, Tollett,* and *Loza* were all properly decided under a *Jackson*-like standard alone; a separate factual-sufficiency analysis was neither made nor necessary to their resolution.

The most important case discussing sufficiency of the evidence was the court of appeals's 1883 decision in *Walker v. State*,[36] in which the court set out four categories or zones to use in analyzing the

---

**29.** *Smith,* Dallam at 409–10. The prosecutor's position was that, in criminal cases, the supreme court could exercise its jurisdiction "only by writ of error, and not by appeal." Thus,

> by writ of error, the errors of law alone could be examined in the supreme court, and that the usual effect of an appeal from an inferior tribunal, being one that opened the facts as well as the law for reexamination, could not be admitted as a right to the *defendant in the district court in a criminal* prosecution, because no such right was ever known to the common law of England.

*Id.* at 410. The supreme court dismissed that contention, noting that the Texas Constitution and Legislature had granted many rights to criminal defendants that were denied them under the common law. *Id.* The court concluded that it had jurisdiction to "consider

this decision of the district judge, with an eye both to the law and the facts as shown by the record." *Id.* at 411.

**30.** 44 Tex. 95 (1875).

**31.** 1 Tex.Ct.App. 488 (1877).

**32.** *Tollett,* 44 Tex. at 97–98.

**33.** *Loza,* 1 Tex.Ct.App. at 491–92.

**34.** *Tollett,* 44 Tex. at 98; *Loza,* 1 Tex.Ct.App. at 490 (quoting *Tollett* ).

**35.** *See Clewis,* 922 S.W.2d at 131 n. 6 (citing *Tollett* and *Loza* ); *Bigby,* 892 S.W.2d at 874 (same).

**36.** 14 Tex.Ct.App. 609 (1883).

question, "Does the evidence support the verdict of the jury?"

First. Where the evidence is conflicting, and there is sufficient [evidence], if believed, to prove the case of the State, the jury being the exclusive judges of the credibility of the testimony, their verdict will not be set aside unless it clearly appears to be wrong.

Second. Where there is no testimony to support it, the verdict will be set aside.

Third. Where the evidence is insufficient to rebut the presumption of innocence, the verdict will be set aside.

Fourth. Where the verdict is contrary to the weight of the evidence, it will be set aside.[37]

*Walker* was apparently the first Texas case to specifically set out the "zone" theory of sufficiency analysis, one that has historically been used to determine whether a party has shouldered his burden of proof by a preponderance of the evidence.[38] In zone one, under *Walker*, the appellate court upholds a criminal conviction when there is sufficient evidence to prove the State's case (even though the evidence may be conflicting), unless "it clearly appears to be wrong."[39] *Walker's* zone two is a "no evidence" standard, and that means *no* evidence or a mere modicum or scintilla. Zone three is "insufficient evidence," more than a mere scintilla but not enough to "rebut the presumption of innocence," *i.e.*, not enough to meet *Jackson's* "beyond a reasonable doubt" standard. Zone four is a verdict contrary to the "weight" of the evidence; this zone translates to the modern Texas civil standard of "against the great weight and preponderance" of the evidence.[40] Missing is zone 5—the modern civil standard of "con-

---

37. *Id.* at 630. Under *Walker*, only the jury can assess credibility, resolve conflicts in the testimony, or decide the weight that should be given to the testimony. *Id.; see also Lane v. State*, 19 Tex.Ct.App. 54, 70 (1885) (quoting *Walker* and stating, "This court does not determine the credibility of the witnesses who testify in the trial court, or the weight to be given to the testimony. It is the exclusive province of the jury to decide these matters").

38. For a discussion of the modern "zone" theory, applicable in Texas civil cases, see William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L.Rev. 515, 517–20 (1991). The authors categorize zone 1 as "no evidence," zone 2 as "insufficient evidence," zone 3 as "enough evidence to support a jury verdict, but not so much that a court would be justified in interfering with a contrary finding," zone 4 as against the "great weight and preponderance of the evidence," and zone 5 as "conclusive evidence." Thus, zone 1 in *Walker* would correspond to the modern zone 3, zone 2 in *Walker* corresponds to modern zone 1, zone 3 in *Walker* corresponds to modern zone 2, and zone 4 is the same in both *Walker* and the modern system.

Given recent decisions by the Supreme Court of Texas, however, this entire "zone" theory of evidentiary sufficiency has been thrown into some doubt. *See generally*, William V. Dorsaneo, III, *Judge & Jury Symposium: Evolving Standards of Evidentiary Review: Revising the Scope of Review*, 47 S. Tex. L.Rev. 225, 226–27 (Winter 2005) (noting that "the Texas Supreme Court has embraced an important recapitulation of the scope of evidentiary review in cases governed by the preponderance of evidence standard of review. A similar approach has been applied by the court to cases controlled by the clear and convincing evidence standard of review") (footnote omitted).

39. The phrase "clearly appears to be wrong" might well translate to "irrational," "unreasonable," or "not sensible" under the *Jackson* formulation.

40. At the time *Walker* was decided, the United States Supreme Court had not yet held that the prosecution must prove all elements of a crime "beyond a reasonable doubt" in all state and federal criminal trials. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof

clusive evidence"—because the State is never entitled to a directed verdict of guilty. The *Walker* court explained that its duty was to determine which zone the evidence fell into.

In *Walker*, the court held that the evidence was "insufficient" (zone 3) to prove that the murder victim had actually died because the State failed to show that the body retrieved 600–900 miles down the Brazos River was actually that of the missing man—W.B. Mathis.[41] Thus, the court reversed the defendant's murder conviction and remanded the case for another trial, giving the State hefty hints on how to produce sufficient evidence in the retrial.[42] *Walker* has been cited as supporting both a legal and factual sufficiency of the evidence review,[43] even though the court's decision was fully consistent with the *Jackson* standard alone.[44]

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). Thus, zone four has no applicability to the elements that the prosecution must prove beyond a reasonable doubt, but it is applicable to the elements that the defendant must prove in establishing an affirmative defense by a preponderance of the evidence.

41. *Walker*, 14 Tex.Ct.App. at 637. Today, of course, the failure to prove that the missing W.B. Mathis was dead would make the evidence legally insufficient to support a murder conviction under *Jackson*.

42. *Id.* at 636 (noting, *inter alia*, that the State could have offered evidence of the height, size, and weight of W.B. Mathis and of the height, size, and probable weight to the person whose skeleton had been found).

43. *Clewis*, 922 S.W.2d at 138–39 (Clinton, J., concurring); *but see id.* at 155 (McCormick, P.J., dissenting) (arguing that *Walker* was "wrong").

44. Some language in *Walker* could be read to support the proposition that the appellate court felt that it had the authority to reverse a jury verdict even though the evidence was "sufficient." In *Walker*, the court stated that "where it was manifest that the verdict was wrong, and it was clear that injustice had been done the defendant, [the verdict] has been set aside, though there was evidence sufficient to support it." 14 Tex.Ct.App. at 629. But the conceptual problem is that the *Walker* court did not have the current *Jackson* standard which requires proof beyond a reasonable doubt, such that the jury's verdict will be upheld only if it is "reasonable," and "rational." There is nothing in *Walker* that suggests that the Texas Court of Appeals would have found a verdict "manifestly wrong" or that an "injustice" had been done to the defendant while at the same time finding it legally sufficient under this *Jackson* standard. This same "language gap" problem occurs in many other early cases in which "against the great weight of the evidence" appears to be a proxy for a verdict which, although supported by some evidence, is nonetheless "irrational" or "unreasonable" even when viewed in the light most favorable to the factfinder's verdict. *See, e.g., Wilkerson v. State*, 21 Tex.Ct.App. 501, 504–05, 2 S.W. 857, 857–58 (1886) (evidence at trial showed that defendant was an innocent *bona fide* purchaser of cow, and when cattle seller admitted in post-verdict affidavit that the blame for selling the true owner's cattle was entirely his, "the verdict and judgment in this case are against the weight of the evidence"); *McLaren v. State*, 21 Tex.Ct.App. 513, 516, 2 S.W. 858, 858 (1886) (when all of the evidence showed that the defendant innocently found the stolen property on the road, never claimed to own it, and returned what he could to its true owner, court found that "[t]his conviction is not only not supported by, but is against the evidence and the law"); *Foresythe v. State*, 20 S.W. 371 (Tex.Crim.App.1892) (when no evidence showed that the defendant stole the horse, he had a bill of sale for it, he had an alibi, and the only inculpatory evidence was that one witness saw defendant in the pasture where the horse had been, "the testimony [did not] establish the guilt of defendant to a reasonable certainty"); *Murphy v. State*, 65 Tex. Crim. 55, 62, 143 S.W. 616, 620 (1912) (reversing conviction for seduction for insufficient evidence; "Taking the record as a whole, and that prior to date that prosecutrix says an engagement to marry took place, and the first act of intercourse, defendant is not shown to have ever paid her attentions, or conducted himself in a way as to win the love and affection of a woman, we deem the evi-

In sum, case law before the creation of the Texas Court of Criminal Appeals held that the evidence in a criminal case was required to be "sufficient" to support a conviction and that evidence was measured against one single standard, but there were various ways of expressing that standard. When the evidence was insufficient, the case was remanded for a second trial.

## B. Texas Appellate Review of Sufficiency of the Evidence from 1891–1976.

The 1876 Texas Constitution stripped the Texas Supreme Court of jurisdiction over criminal cases and created the Texas Court of Appeals that had jurisdiction over all criminal, county court, and probate appeals.[45] A majority of the delegates to the Constitutional Convention of 1875 were progressives and largely anti-government; they were not particularly interested in the judiciary or the structure of state courts, but they had great faith in juries— their fellow citizens.[46] Indeed, every Texas constitution had enshrined the right to a trial by jury in both civil and criminal cases, and, under the 1876 Constitution, that right to a jury trial "shall remain inviolate." [47]

dence insufficient to support a case of seduction"); *Rochetszky v. State*, 94 Tex.Crim. 423, 426, 251 S.W. 232, 233 (1923) (when "[t]he only witness upon whom the State relied reveals such doubt and uncertainty that, in our judgment, his testimony does not support the finding by the jury, beyond a reasonable doubt, that the appellant was the offender" evidence was insufficient to support conviction); *Villareal v. State*, 140 Tex.Crim. 675, 680, 146 S.W.2d 406, 409 (1940) (in capital murder prosecution, reversing conviction because physician's testimony contradicted that of other witnesses; "[o]rdinarily the jury may so decide, but we doubt that the conclusion of the physician as to the position of the parties is sufficient to prove the existence of the facts beyond a reasonable doubt in this particular case, and in view of all of the facts and circumstances which are without dispute"). I do not think that this Court would be proud to say that the evidence in these cases was legally sufficient under the *Jackson* standard.

In one most peculiar case, *Green v. State*, 97 Tex.Crim. 52, 260 S.W. 195 (1924), this Court began its opinion with the statement that "[t]he parties are all negroes," and then stated that the rape victim's uncorroborated testimony that her stepfather raped her was simply unbelievable because she did not report the rape until she discovered that she was pregnant, even though she explained that she did not do so because she was afraid of the defendant. This Court quoted Horatio in *Hamlet*, "commenting on an incident he did not understand, 'But this is wondrous strange,' and Hamlet's reply: 'There are more things in heaven and earth, Horatio, than are dreamt of in your philosophy.'" 97 Tex. Crim. at 53, 260 S.W. 195. This Court forthrightly concluded that it simply did not believe the woman's testimony that she had been raped, even though the jury had. This case is a perfect example of why appellate courts should not sit as a thirteenth juror reviewing the credibility of the witnesses (regardless of their race) and rejecting their testimony out-of-hand. This case, clearly one based solely on rejecting the credibility of the victim, stands as "a derelict upon the waters" of Texas law. I would consign it to the trash barrel where it belongs.

In sum, any review of historical precedent must focus upon the particular facts and the state of the evidence in the specific case before the reviewing court, not upon selective verbiage that the court may have used to describe the sufficiency of the evidence before a single, coherent standard was announced in *Jackson*.

45. Alicia L. Locheed, *The Development of the Court of Criminal Appeals*, 55 TEX. B.J. 1052, 1054–55 (November, 1992).

46. *See id.* at 1053.

47. See 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 53–57 (discussing the historical importance of trial by jury in Texas and noting that "[t]he oddest thing about 'shall remain inviolate' is that Texas requires a jury trial under circumstances that are not considered worthy of a jury trial in most states"). Texas is still one of the most jury-deferential

In 1891, the Texas Constitution was amended in two important respects. First, because the overburdened supreme court was so far behind on its docket, the legislature created three courts of civil appeals which had intermediate appellate jurisdiction.[48] "The theory in creating the courts of civil appeals apparently was that their decisions would be final in most civil cases."[49] To help ensure that goal, the constitutional provision creating the courts of civil appeals also stated that "the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error."[50] This "factual conclusivity" provision did not grant any new, implicit factfinding authority to the courts of civil appeals; instead, it limited the jurisdiction of the supreme court.[51] The supreme court was to confine itself to weighty legal principles and conflicts in the law.[52] The courts of civil appeals could then consistently apply those enduring legal principles to varying facts, but whenever the law otherwise permits or requires a determination of "the facts" for some pur-

pose in an appeal, the decision by a court of civil appeals on those questions of fact was conclusive.[53] The "factual conclusivity" provision applies *only* to those factual questions which a statute or other law requires or permits.[54]

A second 1891 constitutional amendment created the Texas Court of Criminal Appeals that had exclusive appellate jurisdiction over criminal cases.[55] The court of criminal appeals reviewed issues concerning the sufficiency of the evidence exactly as the Texas Supreme Court and the Texas Court of Appeals had done before it: one single standard of review, but many different ways of articulating that standard. Here are some examples:

* "If the guilt of appellant is not made to appear to a reasonable certainty, it is the duty of this court to reverse the judgment"; and [every element] "must be proven beyond a reasonable doubt; proved by facts and circumstances which lead with reason-

---

states in the United States. We allow jury trials under situations virtually no other state permits; our constitution holds that trial by jury is an "inviolate right" which cannot be abridged; we permit jury sentencing in all criminal cases; we forbid a trial judge from commenting on the weight of the evidence, to name but a few of our state's unusually jury-deferential laws and policies.

48. TEX. CONST. art. V, § 6; *see* 1 BRADEN at 399 (noting that the "[c]reation of the courts of civil appeals was one of a series of attempts to reduce the caseload of the supreme court").

49. 1 BRADEN at 399.

50. TEX. CONST. art. V, § 6; *see also* TEX. GOV'T CODE § 22.225(a) ("[a] judgment of a court of appeals is conclusive on the facts of the case *in all civil cases* ") (emphasis added).

51. *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 410, 44 S.W. 69, 69 (1898); *see also Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 648 (Tex.1988); *Pool v. Ford Motor Co.,*

715 S.W.2d 629, 633 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 665, 244 S.W.2d 660, 661 (1951).

52. 1 BRADEN at 399 ("The supreme court's primary function was to be the resolution of conflicts").

53. *See Choate,* 91 Tex. at 410, 44 S.W. at 69–70 (stating that the 1891 constitutional amendment conferred upon the courts of civil appeals the same power over fact questions that the supreme court exercised prior to that amendment).

54. *See* 1 BRADEN at 400–01 (stating that "courts of civil appeals have no general factfinding power").

55. TEX CONST. art. V, § 5 ("The Court of Criminal Appeals shall have final appellate jurisdiction ... in all criminal cases of whatever grade, with such exceptions and under such regulations as may be provided in this Constitution or as prescribed by law").

able certainty to the conclusion sought, and not left to speculation and surmises[.]" [56]

* "This court will not reverse unless there is such a manifest lack of evidence as to make it apparent that the verdict was the result of prejudice or that such verdict is against the great weight of the evidence." [57]

* "The sanctity of the verdict of the jury is such that it must not lightly be annulled in any case, but the law does not contemplate that one shall suffer because of the verdict when the evidence, viewed in its strongest light from the standpoint of the state, fails to make his guilt reasonably certain." [58]

* "[T]his court will reverse a case on the insufficiency of the evidence only when the testimony, viewed in its strongest light from the standpoint of the State, fails to make guilt of the accused reasonably certain." [59]

* "Ordinarily if facts be proved from any source which, if believed, would warrant the conclusion of guilt, the evidence is sufficient to support the conviction." [60]

* "The jury is not bound to accept all or any of the testimony of a witness, even though uncontradicted. It is not the prerogative of the appellate court to interfere with the jury's finding on questions of fact where there is evidence authorizing their verdict." [61]

* "[T]he jury has been made the exclusive judges of the facts proven and the weight to be given to the testimony ... this court does not, and should not, assume to exercise the right to reverse on the facts, unless the evidence, when viewed in its strongest light from the standpoint of the State, fails to make guilt reasonably certain." [62]

* "In reviewing the sufficiency of the evidence to support the conviction,

56. *Mitchell v. State,* 33 Tex.Crim. 575, 577, 28 S.W. 475 (1894) (because evidence "utterly failed" to show defendant's specific intent to ravish homeowner, conviction reversed). The *Mitchell* standard reads much like the constitutionally mandated *Jackson* standard of review.

57. *Smith v. State,* 85 Tex.Crim. 355, 357, 212 S.W. 660, 661 (1919) (evidence was sufficient to support burglary conviction).

58. *Jolly v. State,* 87 Tex.Crim. 288, 293, 221 S.W. 279, 282 (1920).

59. *Franklin v. State,* 147 Tex.Crim. 636, 638, 183 S.W.2d 573, 574 (1944) (citations omitted).

60. *Everitt v. State,* 156 Tex.Crim. 332, 335, 242 S.W.2d 398, 399 (Tex.Crim.App.1951) (op. on reh'g).

61. *Hall v. State,* 158 Tex.Crim. 243, 246, 254 S.W.2d 523, 526 (Tex.Crim.App.1953) (op. on reh'g).

62. *Parker v. State,* 432 S.W.2d 526, 531 (Tex. Crim.App.1968) (quoting *Mason v. State,* 108 Tex.Crim. 452, 455, 1 S.W.2d 283, 284 (1928) (op. on reh'g)). In *Parker,* we stated,

While this court has the right to reverse a judgment of conviction on account of the insufficiency of the evidence (Texas Code Crim. Procedure, art. 939) and it becomes its duty to do so "if the guilt of the accused is not made to appear with reasonable certainty" ... no fixed rule has been devised which will in all cases furnish a certain standard. Necessarily each case must in a measure be tested by its own facts.... However, when a jury, advised of the restrictions which the law places upon them in condemning one on circumstantial evidence, reaches the conclusion upon evidence properly before them that the accused is guilty, it is not for the reviewing court to supplant their findings by its own, unless it is able to point to weaknesses, omissions, or inconsistencies in the evidence which destroy its cogency.

*Id.* (internal citations omitted).

we must view the evidence in the light most favorable to the verdict. In doing so, the verdict will be sustained if there is any evidence which, if believed, shows the guilt of the accused." [63]

Until *Clewis* in 1996, this Court had consistently used a single standard (although the precise phrasing varied) and reviewed the evidence in the light most favorable to the factfinder, giving great deference to the jury's credibility and weight determinations. But it did not hesitate to reverse a conviction if the evidence failed to prove a defendant's guilt "with reasonable certainty," or "beyond a reasonable doubt." Until *Jackson* in 1979, the result of a finding of insufficient evidence in Texas was always the same: remand and retrial. There was no acquittal on appeal when the evidence was insufficient. So matters stood until the United States Supreme Court mandated a constitutional, due process review of sufficiency of the evidence for all courts.

## C. The United States Supreme Court Announces Constitutional Standards of Review and Double Jeopardy Consequences of Insufficient Evidence.

In 1979, the Supreme Court, in *Jackson v. Virginia*, held that the Due Process Clause of the federal constitution requires the government to produce "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." [64] The Court explicitly rejected a "no evidence" standard of review that it had applied nineteen years earlier in *Thompson v. Louisville*. [65] In *Thompson*, the Supreme Court had concluded that "we find no evidence whatever in the record to support these convictions. Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt." [66] In *Jackson*, the Court explained that the "no evidence" doctrine "secures to an accused the most elemental of due process rights: freedom from a wholly arbitrary deprivation of liberty[,]" [67] but that standard is inadequate for "a question of evidentiary 'sufficiency.' " [68] Instead, the correct standard must incorporate the prosecution's burden of proof—beyond a reasonable doubt—in a due-process review. The Court noted that a " 'reasonable doubt' has often been described as one 'based on reason which arises from the evidence or lack of evidence.' " [69] For example, a reasonable doubt might arise because the verdict is manifestly against the great weight and

63. *Banks v. State*, 510 S.W.2d 592, 595 (Tex. Crim.App.1974).

64. *Jackson v. Virginia*, 443 U.S. 307, 312–13, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

65. 362 U.S. 199, 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (stating that the "ultimate question presented to us is whether the charges against petitioner were so totally devoid of evidentiary support as to render his conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment. Decision of this question turns not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all").

66. *Id.* at 206, 80 S.Ct. 624 (footnotes omitted).

67. *Jackson,* 443 U.S. at 314, 99 S.Ct. 2781.

68. *Id.* The Supreme Court explained that a "no evidence" standard does not "protect against misapplications of the constitutional standard of reasonable doubt" because a "no evidence" standard is satisfied by a "mere modicum" of evidence. "But it could not seriously be argued that such a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt." *Id.* at 320, 99 S.Ct. 2781.

69. *Id.* at 318 n. 9, 99 S.Ct. 2781.

preponderance of the evidence or because there is nothing more than a mere scintilla of evidence to support some element of the offense. But, of course, the reviewing court does not " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' " [70] Rather, it "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." [71] Thus, *all of the evidence* is to be considered in the light most favorable to the prosecution" because the reviewing court may impinge upon " 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." [72]

In sum, due process does not permit legal sufficiency of the evidence to be measured by a "no evidence" (zone 1) standard; it must be measured in terms of the prosecution's constitutionally-mandated "beyond a reasonable doubt" burden of proof (which does not correlate to any of the "zones" in civil review standards fashioned on the "by a preponderance of the evidence" burden of proof), but giving great deference to the jury's role in assessing credibility, weight, and reasonable inferences. [73]

The *Jackson* "legal sufficiency" standard is the one required by the United States Constitution, and every state and federal court must comply with that standard. [74] It is the only standard required for reviewing sufficiency of the evidence. While noting that "states are free to set higher standards of review[,]" this Court quickly adopted the *Jackson* standard for the review of sufficiency of the evidence. [75] We adhered to that single, constitutionally mandated standard for seventeen years. [76]

70. *Id.* at 318–19, 99 S.Ct. 2781 (citation omitted).

71. *Id.* at 319, 99 S.Ct. 2781.

72. *Id.* (emphasis in original).

73. Applying that standard in *Jackson,* the Supreme Court upheld the conviction, stating that "faced with a record of historical facts that supports conflicting inferences [we] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and [we] must defer to that resolution." *Id.* at 326, 99 S.Ct. 2781.

74. *See Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989) (rejecting language that evidence is sufficient "if there is any evidence which, if believed, shows the guilt of the accused" as inconsistent with *Jackson* and constitutionally impermissible).

75. *Griffin v. State,* 614 S.W.2d 155, 158–59 & n. 5 (Tex.Crim.App.1981).

76. *See, e.g., Johnson v. State,* 803 S.W.2d 272, 279 (Tex.Crim.App.1990) ("The standard of review for sufficiency of the evidence in a criminal case is 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' "); *Dunn v. State,* 721 S.W.2d 325, 327 (Tex.Crim.App.1986) ("The Federal Constitutional test, which this Court has adopted, is whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt"); *Ibanez v. State,* 749 S.W.2d 804, 806 (Tex.Crim.App. 1986) ("When reviewing sufficiency of the evidence this Court is bound to review the evidence in the light most favorable to the jury's verdict. We must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"); *Burks v. State,* 693 S.W.2d 932, 937 (Tex.Crim.App.1985) ("in reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, the reviewing court must view the evidence in the light most favorable to a jury's verdict and consider whether any rational trier of fact could have found the essential elements of the crime be-

Similarly, the Texas Legislature declined hints in *Griffin* that it could set a higher standard of review; it did not enact any statutes to heighten the *Jackson* sufficiency review.

The legal consequence of a finding of insufficient evidence under the *Jackson* standard is an acquittal on appeal; any retrial is barred by double jeopardy principles.[77] However, in its 1982 decision in *Tibbs v. Florida,*[78] the Supreme Court held that, if a state chooses to conduct a factual, as well as legal, sufficiency review, double jeopardy does not bar a retrial.[79] The Supreme Court explained,

> A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves.... Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.[80]

Thus, an appellate reversal based on the weight of the testimony "simply affords the defendant a second opportunity to seek a favorable judgment" because such a reversal can occur only after the State has produced sufficient evidence to convict and has persuaded the jury to convict.[81]

Ironically, the Florida Supreme Court had, in the *Tibbs* case itself, jettisoned its judicially created "factual sufficiency" review because it was conceptually flawed and unworkable in practice.[82] Although it noted that a state rule of criminal procedure allowed a trial judge to grant a motion for new trial if the jury verdict is "contrary to the law or weight of the evidence," the Florida Supreme Court concluded that "an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact."[83] "Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal."[84] The court recognized that the language in some earlier opinions was ambiguous and could be interpreted as calling for a review of factual sufficiency, but the notion of factual-sufficiency review had "a questionable historical foundation."[85] Furthermore, the court concluded that "[c]onsiderations of policy

yond a reasonable doubt"); *Taylor v. State,* 684 S.W.2d 682, 684 (Tex.Crim.App.1984) ("The due process standard for appellate review enunciated in *Jackson v. Virginia* ... is applicable in Texas to both direct and circumstantial evidence cases") (citations omitted).

77. *Burks v. United States,* 437 U.S. 1, 17–18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient[;] the only "just" remedy available for that court is the direction of a judgment of acquittal"); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (double jeopardy principles announced in *Burks* apply equally to state convictions based on legally insufficient evidence).

78. 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

79. *Id.* at 47, 102 S.Ct. 2211.

80. *Id.* at 42, 102 S.Ct. 2211.

81. *Id.* at 42–43, 102 S.Ct. 2211.

82. *Tibbs v. State,* 397 So.2d 1120, 1125–26 (Fla.1981).

83. *Id.* at 1123.

84. *Id.*

85. *Id.* at 1125.

support, if not dictate" elimination of factual-sufficiency review on appeal.[86] First, the court noted that the proper role of appellate courts in Florida criminal cases was to leave questions of the weight of the evidence to the trier of fact.[87] Second, eliminating factual-sufficiency review "will avoid disparate appellate results" or further review to determine whether a reversal is based on legally or factually insufficient evidence.[88] Third, abolishing a factual-sufficiency review will "eliminate any temptation appellate tribunals might have" to reverse for factual insufficiency to avoid the double-jeopardy bar on retrials for legal insufficiency.[89] The Florida Supreme Court concluded that twelve ordinary citizens sitting as jurors are better able to determine the credibility of the witnesses and the weight of the testimony than are appellate judges reading the written record. A factual-sufficiency review on appeal contradicts that fundamental fact.

## D. Texas Standards for Reviewing the Sufficiency of Evidence to Reject an Affirmative Defense.

The first time that this Court directly addressed the concept of factual-sufficiency review was in *Schuessler v. State*,[90] a 1986 case in which the court of appeals had held that the jury's rejection of his affirmative defense of insanity was against the great weight and preponderance of the evidence.[91] This Court rejected that standard, even for affirmative defenses in which the defendant bears the burden of proof by a preponderance of the evidence—a civil law standard—because there can be "no reweighing or reclassifying of the evidence by the appellate court."[92] This Court then applied—to the rejection of an affirmative defense—the same *Jackson* standard of legal sufficiency that it routinely applied to the elements of the criminal offense.[93]

Judge Clinton dissented because the issue of insanity is not an element of the criminal offense and thus is not governed by the due process standard set out in *Jackson*.[94] He explained,

When an affirmative defense is not an element of an offense charged and *Winship* is not implicated by allocation of burden of proving an affirmative defense, it follows that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction" prescribed by *Jackson v. Virginia* is irrelevant to a review of sufficiency of evidence relating to an affirmative defense. The trier of fact was not called on to view the evidence in the light most favorable to the prosecution in order to find "the essential elements of the crime beyond a reasonable doubt." Rather, its

---

86. *Id.*

87. *Id.*

88. *Id.*

89. *Id.*

90. 719 S.W.2d 320 (Tex.Crim.App.1986).

91. *Schuessler v. State*, 647 S.W.2d 742, 748–49 (Tex.App.-El Paso 1983) (applying the civil standard of "against the great weight and preponderance of the evidence" because the defendant bore the burden of proving, by a preponderance of the evidence, his affirmative defense).

92. *Schuessler*, 719 S.W.2d at 328 (quoting *Van Guilder v. State*, 709 S.W.2d 178, 181 (Tex.Crim.App.1985)).

93. *Id.* (stating that "we must determine whether the evidence, when viewed most favorably to the jury's verdict, is sufficient to support the jury's implicit rejection of appellant's affirmative defense of insanity").

94. *Id.* at 332 (Clinton, J., dissenting).

function was to determine whether an accused has proved an affirmative defense "by a preponderance of the evidence." [95]

Judge Clinton's position was adopted four years later in *Meraz v. State*,[96] a case in which the defendant appealed the jury's rejection of his plea of incompetence. In *Meraz*, this Court applied the civil law factual-sufficiency standard when the party who bears the burden of persuasion by a preponderance of the evidence complains that the rejection of his issue is "against the great weight and preponderance of the evidence." [97] This Court reasoned that

the utilization of the standard of review constitutionally reserved for the courts of appeals and required by the Texas Supreme Court to be applied in situations where the burden of proof was on the individual claiming factual insufficiency does not impede a defendant from seeking a factual review relevant to his affirmative defense nor does it preclude him from a sufficiency review as to whether there was sufficient evidence to

warrant a conviction. The two reviews are mutually exclusive.[98]

Indeed, this Court was exactly correct: the two different types of review are mutually exclusive. Review for legal sufficiency under the *Jackson* "beyond a reasonable doubt" standard is required for every element that supports a conviction, but a sufficiency-of-the-evidence review under civil standards is appropriate when reviewing affirmative defenses in which the defendant bears a burden of "preponderance of the evidence." [99] In *Meraz*, this Court held that the "factual conclusivity clause" of the Texas Constitution applies when the defendant bears the burden of proof by a preponderance of the evidence.[100]

And this Court followed *Meraz* in *Bigby v. State*,[101] by reviewing the sufficiency of the evidence that supported the jury's rejection of the defendant's affirmative defense of insanity in a capital murder trial. In *Bigby*, as in *Meraz*, the burden of proof was on the defendant to establish his defense by a preponderance of the evidence.[102] In that context, use of the civil

**95.** *Id.*

**96.** 785 S.W.2d 146 (Tex.Crim.App.1990).

**97.** *Meraz*, 785 S.W.2d at 155. As this Court explained, the issue in such a case is not the sufficiency of the evidence to support a conviction, but the adequacy of proof for an affirmative defense in which the defendant statutorily has both the burden of production and the burden of persuasion. *Id.* at 151.

**98.** *Id.* at 153.

**99.** *Id.* at 153–55.

**100.** *Id.* at 153–54. This Court held,

We now join our brethren on the Texas Supreme Court and conclude that the "factual conclusivity clause," within Art. V, § 6, operates to limit our jurisdiction and confers conclusive jurisdiction on the courts of appeals to resolve questions of weight and preponderance of the evidence adequate to

prove a matter that the defendant must prove. Moreover, when the courts of appeals are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved his affirmative defense or other fact issue where the law has designated that the defendant has the burden of proof by a preponderance of evidence, the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust.

*Id.* at 154–55. Of course, as the Texas Supreme Court refines its sufficiency-of-the-evidence standards of review, *see, e.g., City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005), this Court may choose to follow suit as a matter of comity and consistency.

**101.** 892 S.W.2d 864 (Tex.Crim.App.1994).

**102.** *Id.* at 875 ("At trial appellant had both the burden of production of evidence and the

standards adopted by the Texas Supreme Court is entirely appropriate. In these cases, Texas courts have the power and authority to conduct a sufficiency review of the evidence under controlling supreme court precedent because: (1) both the burden of production and persuasion is on the defendant; and (2) that burden is the civil standard of proof "by a preponderance of the evidence." [103] Both *Meraz* and *Bigby* are in line with the historical and jurisprudential underpinning of Texas civil law and the Texas Constitution. We followed our brethren on the Texas Supreme Court in applying the factual conclusivity clause to those "questions of fact" for which the proponent bears the burden of proof by a preponderance of the evidence. [104] And we should continue to follow that court's development of sufficiency-of-the-evidence review when the proponent bears the burden of proof by a preponderance of the evidence. [105]

The real issue is not whether "factual sufficiency" review exists in Texas law. The issue is whether "factual sufficiency" review applies to the elements of a criminal offense that the State must prove beyond a reasonable doubt. And, of course, both this Court and the courts of appeals have the authority to review "the facts" as well as the law. [106] If "the facts" do not establish every element beyond a reasonable doubt, those "facts" require an appel-

late court to acquit the defendant under *Jackson*.

But two years after this Court delivered *Meraz*, one court of appeals, in *Stone v. State*, [107] applied the *Meraz* reasoning to a factual-sufficiency review of the elements of the offense, even though those elements must be proven beyond a reasonable doubt and are subject to a constitutional sufficiency review under *Jackson*. [108] The court of appeals stated that, under the "factual conclusivity clause," it had the power to review the factual sufficiency of the evidence to support a conviction as well as the power to review the factual sufficiency to support affirmative defenses:

> [T]he *Jackson* test does not logically preclude factual-sufficiency review. *Jackson* requires the appellate court to view the evidence in the light most favorable to the prosecution. *Jackson* permits the states to devise tests for factual-sufficiency review that do not indulge in presumptions in favor of either side. Because *Jackson* does not preclude factual-sufficiency review and because we see nothing in the *Meraz* opinion that limits the pre-existing factual-sufficiency review power of the courts of appeals to matters the defendant must prove, we conclude that a criminal defendant is entitled to a factual-sufficiency review as a matter of state constitu-

burden of persuasion for his affirmative defense of insanity").

**103.** In those few instances in which the State has a burden of proof measured by the civil standard of "preponderance of the evidence" (*e.g.*, in a motion to revoke probation), the same civil-standard sufficiency review would apply.

**104.** *See In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (Tex.1951).

**105.** *See, e.g., City of Keller v. Wilson,* 168 S.W.3d 802 (Tex.2005).

**106.** Tex.Code Crim. Proc. art. 44.25 ("The courts of appeals or the Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts"). It would appear that, under article 44.25 (and all of its predecessor statutes), both the courts of appeals and the Court of Criminal Appeals have co-equal jurisdiction to reverse "on the facts" as well as the law.

**107.** 823 S.W.2d 375 (Tex.App.-Austin 1992, pet. ref'd).

**108.** *Id.* at 377.

tional law.[109]

*Jackson* does not, of course, preclude a state from enacting a factual-sufficiency review, but neither does it suggest that such review is necessary, appropriate, or useful. Until the court of appeals's decision in *Stone*, no Texas court had found a constitutional right to a factual-sufficiency review of the elements of a criminal offense.[110] There is nothing in the "factual conclusivity" clause of the Texas Constitution that grants authority to the courts of appeals to create a factual-sufficiency re-

view of criminal convictions absent some statutory enactment or other law. Because that provision does not grant any new authority to the courts of appeals, a defendant does not have a constitutional "right" to a factual-sufficiency review of his conviction based solely upon the "factual conclusivity" clause. Any *right* to a factual-sufficiency review of the elements of a criminal offense must exist elsewhere in the law, if at all. Although the Texarkana Court of Appeals adopted the *Stone* reasoning and result,[111] other courts of appeals rejected it.[112]

109. *Id.* at 379–80.

110. This Court had explicitly rejected such "factual sufficiency" claims. *See Minor v. State*, 657 S.W.2d 811, 812 n. 5 (Tex.Crim.App.1983) (*per curiam* ); *Combs v. State*, 643 S.W.2d 709, 716 n. 1 (Tex.Crim.App.1982); *White v. State*, 591 S.W.2d 851, 855 (Tex.Crim.App.1979).

111. *See White v. State*, 890 S.W.2d 131, 134 (Tex.App.-Texarkana 1994, pet. ref'd) ("Our exclusive fact jurisdiction under the constitution also both permits and requires us to review for the factual sufficiency when the sufficiency of the evidence is challenged on appeal").

112. *See Wilson v. State*, 879 S.W.2d 309, 311 (Tex.App.-Amarillo 1994, no pet.) ("we do not, as appellant requests us to, sit as a thirteenth juror reweighing the evidence to decide whether we believe the evidence established that he caused the penetration, nor act as a superjury reweighing the evidence; rather, we act only as a due process safeguard insuring rationality of the fact finder. In doing so, we test the evidence to ascertain if it is at least conclusive enough for a reasonable fact finder to believe the questioned element is established beyond a reasonable doubt.") (citations omitted); *House v. State*, 880 S.W.2d 512, 514 (Tex.App.Eastland 1994, no pet.) (collecting cases and stating that "[a]ll of these courts agree that 'factual sufficiency' challenges in criminal cases are limited to affirmative defenses and other issues where the defendant has the burden of proof; consequently, a challenge to the sufficiency of the

evidence to support the elements of the conviction is reviewed under the [*Jackson* standard]"); *Clewis v. State*, 876 S.W.2d 428, 439 (Tex.App.-Dallas 1994), *vacated by* 922 S.W.2d 126 (Tex.Crim.App.1996); *Pender v. State*, 850 S.W.2d 201, 203 (Tex.App.-Fort Worth 1993, no pet.) ("We disagree with the Austin court [in *Stone* ], and decline to follow the rationale expressed in its opinion. The Court of Criminal Appeals in *Meraz* was only addressing appellate review of affirmative defenses; the opinion did not change the standard of review concerning the sufficiency of the evidence to prove the elements of the State's case"); *Smith v. State*, 874 S.W.2d 269, 272 (Tex.App.Houston [14th Dist.] 1994, pet. ref'd)(noting its disagreement with *Stone* and holding "that the standard set out in *Meraz* applies only to cases in which the defendant has the burden of proof and that the only standard to be applied when reviewing the sufficiency of the evidence is the standard set out in *Jackson* "); *Lopez v. State*, 824 S.W.2d 298, 303–04 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (declining to make a factual sufficiency review); *Crouch v. State*, 858 S.W.2d 599, 601 (Tex.App.-Fort Worth 1993, pet. ref'd). The position of these courts of appeals is summarized in *Crouch* as follows:

With respect to Crouch's claim that the jury's finding was against the great weight and preponderance of the evidence, we hold that there is no such thing as a factual sufficiency of the evidence review in criminal cases. If there is sufficient evidence from which a rational trier of fact could determine beyond a reasonable doubt that the defendant used a firearm in the com-

The reasoning and result in *Stone* were premised upon the proposition that the intermediate courts of appeals are vested with the authority to review factual sufficiency in criminal cases under Article V, section 6 of the Texas Constitution (the factual conclusivity clause).[113] However, the constitutional provision says nothing about any Texas court's authority to conduct a factual-sufficiency review of the evidence in a criminal case. As discussed above, it is only when the law otherwise allows or requires the review of a factual question that the conclusivity clause applies.[114]

In 1979, this Court had held, in *White v. State*, that we have "no fact jurisdiction as do the Courts of Civil Appeals, and cannot 'unfind' a vital fact finding by a jury. Since we do not have the jurisdiction to pass upon the great weight and preponder-

ance of the evidence," [115] the defendant's contention that his court could review factual sufficiency was rejected.[116] If this Court, in 1979, did not have jurisdiction to conduct a factual-sufficiency review, the courts of appeals could not gain any "factual conclusivity" power from us when, two years later, they were authorized to review criminal cases.

This conclusion was reiterated by the Texas Legislature in 1981 when it amended what is now section 22.225 of the Texas Government Code. That provision states, "A judgment of a court of appeals is conclusive on the facts of the case *in all civil cases*." [117] This section says nothing about the conclusivity of factual findings in criminal cases.[118] Furthermore, this Court had, until *Clewis*, always held that neither we nor the courts of appeals had any jurisdic-

---

mission of or flight from the commission of an offense, then the jury's finding to that effect would never be beyond the great weight and preponderance of the evidence. While there may be some justification for such a review in a civil case where the only requirement is that there be merely more than a scintilla of evidence to support the jury's finding, the jury is most often required to find a fact by a preponderance of the evidence; however, there is no similar justification for such a review in a criminal case where the legal sufficiency test more closely approximates the burden that the State must meet.
*Id.* at 601.

**113.** *Stone*, 823 S.W.2d at 377–78.

**114.** *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 649 (Tex.1988) ("By creating the courts of appeals and vesting them with 'appellate jurisdiction,' the 1891 amendment to the constitution conferred upon those courts the same power over fact questions that this court exercised prior to that amendment").

**115.** *White v. State*, 591 S.W.2d 851, 855–56 (Tex.Crim.App.1979).

**116.** *Id.* at 856.

**117.** Tex. Gov't Code § 22.225(a) (emphasis added). Although this statute has been amended numerous times since the courts of civil appeals were renamed the courts of appeals in 1981 and given appellate jurisdiction over criminal matters, the legislature has not seen fit to grant "factual conclusivity" statutory authority to the courts of appeals in criminal cases.

**118.** I agree with the reasoning in *Arvay v. State*, 646 S.W.2d 320 (Tex.App.-Dallas 1983, pet. ref'd), on the legislative purpose of this statute which was formerly article 1820:

we hold that criminal cases are not within the provision of article 5, section 6, that the decisions of the Courts of Appeals "shall be conclusive on all questions of fact brought before them on appeal or writ of error." This holding is also supported by a legislative interpretation of section 6 in the implementing legislation, article 1820 of the Texas Revised Civil Statutes (Vernon Supp. 1982). As amended in 1981, this statute provides: "The judgments of the Courts of Appeals *in civil cases* shall be conclusive in all cases on the facts of the cases." (Emphasis added). Evidently the legislature was careful to limit the fact jurisdiction of the Courts of Appeals to civil cases.
*Id.* at 322.

tion to assess the factual sufficiency of evidence in a criminal case:

> It is well settled that *our* Court does not have jurisdiction to pass upon the weight and preponderance of the evidence or "unfind" a vital fact. More specifically, our determinations of sufficiency of the evidence have never involved passing upon the weight and preponderance of the evidence.... In deciding sufficiency of the evidence questions this Court views the evidence in the light most favorable to the verdict.... Sufficiency of the evidence as determined by this Court is a question of law. It is irrelevant whether we as a court believe the evidence, or believe that defense evidence "outweighs" the State's Evidence. If there is any evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds.[119]

Furthermore, the Code of Criminal Procedure contains two provisions that explicitly state that the jurors are the exclusive judges of facts in jury trials.[120] Articles 36.13 and 38.04 are clear statutory mandates which cannot be reconciled with a judicially created doctrine that authorizes the courts of appeals to redetermine the facts and the weight of the testimony or "unfind" facts that the jury has found. There are no analogous mandatory provisions like these articles for civil cases.[121] Thus, trial courts and courts of appeals may have implicit authority to redetermine or "unfind" facts and to reweigh evidence in civil cases, but they do not have similar authority in criminal cases because articles 36.13 and 38.04 clearly forbid any such reweighing or "unfinding."

### E. *Clewis.*

In 1996, this Court resolved the split in the courts of appeals on the issue of factual-sufficiency review. In a fractured 5–4 opinion in *Clewis v. State*,[122] this Court

119. *Combs v. State,* 643 S.W.2d 709, 716 (Tex. Crim.App.1982) (citations omitted; emphasis in original). We further noted, "no other standard may be utilized by the Courts of Appeals in reviewing criminal convictions other than sufficiency of the evidence to support the conviction." *Id.* n. 1.

120. Tex.Code Crim. Proc. art. 36.13 ("Unless otherwise provided in this Code, the jury is the exclusive judge of the facts") and art. 38.04 ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony"). In bench trials, of course, it is the trial judge who is the sole factfinder, and his credibility and weight determinations are entitled to the same deference as that given to a jury.

121. Nonetheless, the Supreme Court invokes the Texas Constitution's provision on the inviolable right to a jury trial when reversing a court of appeals's factual sufficiency decision which treads upon a jury's credibility and weight determinations. *See, e.g., Herbert v. Herbert,* 754 S.W.2d 141, 143–44 (Tex.1988)

(reversing court of appeals's decision on factual sufficiency and noting that "[t]he admission by the court of appeals that reasonable minds could differ about the conclusions to be drawn from the evidence makes it abundantly clear that a substitution of court findings for jury findings has occurred. This is clearly error"); *see id.* at 147 (Mauzy, J., dissenting) (noting that factual sufficiency review allows appellate court judges "to usurp the jury function. It is allowing them to substitute their own thought processes for those of the jury. Any distinction between appellate judges weighing the evidence and appellate judges determining fact questions as would a jury is a distinction that exists in semantics only and not in reality").

122. 922 S.W.2d 126 (Tex.Crim.App.1996). Judge Maloney wrote the majority opinion; Judge Clinton joined that opinion, but also wrote a concurring opinion, as did Judge Meyers. Presiding Judge McCormick wrote a dissenting opinion, joined by Judge Keller. Judge White wrote a separate dissenting opinion as did Judge Mansfield.

rejected Justice LaGarde's thorough explanation in the court of appeals of why factual-sufficiency review in criminal cases was neither authorized nor appropriate.[123] Instead, the Court adopted the reasoning and result in *Stone.*[124] This Court cited an example to explain why factual-sufficiency review was an important safeguard against runaway juries:

> The prosecution's sole witness, a paid informant, testifies that he saw the defendant commit a crime. Twenty nuns testify that the defendant was with them at the time, far from the scene of the crime. Twenty more nuns testify that they saw the informant commit the crime. If the defendant is convicted, he has no remedy under *Jackson* because the informant's testimony, however incredible, is legally sufficient evidence.[125]

Of course, this was a law-school hypothetical; no one had heard of such a bizarre jury which would reject the eyewitness testimony of forty nuns and believe a single paid informant instead. Would such a result be the product of a "rational" or "reasonable" jury under *Jackson?* Would the United States Supreme Court (or this Court) uphold such a verdict under its carefully crafted language that, given this evidence, any *"rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt?" Under the hypothetical as presented, it would appear to be an irrational verdict. But suppose that the defendant were a priest?

Or that the defendant had just donated a million dollars to the local convent? Or that the nuns were inconsistent and contradictory on all of the underlying details of their testimony? We defer to the jury's credibility and weight determinations because they have seen and assessed the witnesses in person, and they have heard *all* of the evidence, not just the bare-bone facts of a hypothetical.

Nonetheless, in *Clewis*, this Court judicially created a new appellate standard for reviewing the factual sufficiency of evidence on top of the legal sufficiency review which had, under various phrasing, existed in Texas for 150 years. Under that newly minted standard,

> an appellate court reviews the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination. This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury.[126]

Thus, *Clewis* empowered the courts of appeals to act as a "thirteenth juror" (one who was not even present to see and hear the witnesses) and disagree with the factfinder's determination, but to be deferential to the factfinder's judgment as it did so. This standard was ambiguous and contradictory from the beginning.

123. *Clewis v. State,* 876 S.W.2d 428, 429–40 (Tex.App.-Dallas 1994), *vacated by* 922 S.W.2d 126 (Tex.Crim.App.1996). In that opinion, the court of appeals noted that, even if the courts of appeals have fact jurisdiction in criminal cases under the Texas Constitution, the factual conclusivity clause "[d]oes not purport to set out the *standard of review* required to exercise that fact jurisdiction. The question before us in this case, therefore, is what *standard of review* we are required to apply[.]" *Id.* at 431.

124. *Clewis,* 922 S.W.2d. at 129 ("We hold that the proper standard of review for factual sufficiency of the elements of the offense is the one articulated by the Third Court of Appeals in *Stone* ").

125. *Id.* at 133 n. 12 (quoting *Clewis,* 876 S.W.2d at 444 n. 2 (McGarry, C.J., concurring)).

126. *Clewis,* 922 S.W.2d at 133.

In the past ten years Texas courts have seen how it works in practice. Our decision in *Clewis* has been cited, distinguished, explained, criticized, limited, clarified, or applied in more than 5,000 cases, eleven law review articles, and nine treatise sections.[127] It has kept lawyers, judges, and paper mills busy. We have "clarified" or "refined" *Clewis* in at least six cases ourselves because we did not initially explain precisely how a factual-sufficiency review differs from a legal sufficiency review. It is to those cases I now turn.

### F. Attempts to Clarify *Clewis*.

The first clarification came in the same year that *Clewis* was decided. In *Jones v. State*,[128] a capital murder case, this Court stated that a factual-sufficiency review requires the appellate court to review *all* of the evidence, not just the evidence which supports the verdict.[129] "The appellate court reviews the evidence weighed by the jury which tends to prove the existence of the elemental fact in dispute, and compares it to the evidence which tends to

disprove that fact."[130] But the reviewing court must be appropriately deferential to the factfinder,

> finding fault only when "the verdict is against the *great* weight of the evidence presented at trial so as to be *clearly wrong and unjust.*" Examples of such a wrong and unjust verdict include instances in which the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias."[131]

This Court's conscience was not shocked by the jury's verdict in *Jones*. We rejected the defendant's factual-sufficiency claim because there was conflicting evidence of whether he intended to shoot the murder victim.[132]

In 1997, the year after *Clewis* was decided, this Court held, in *Cain v. State*,[133] that the courts of appeals must continue to give considerable deference to the original factfinder under a factual-sufficiency review.[134] In that case we reversed the court of appeals because "it was not deferential to the jury's determination of witness credi-

---

**127.** The total number of Shepard's citations to *Clewis* listed on Lexis as of September 25, 2006, was 5,786, including eleven law review articles and nine treatise sections. One law review article begins with the statement "Citizens convicted of crimes in Texas may have a chance at a new trial thanks to *Clewis v. State.*" Mark Bankston, *Forty Nuns Can't Be Wrong: Reviewing Factual Sufficiency of Evidence Without the Light Most Favorable to the Prosecution, Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App.1996)*, 38 S. Tex. L.Rev. 263, 263 (March 1997). But as Professor Dix notes, reversals under *Clewis* are supposed to be (and are) exceedingly rare. 43 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 31.133 at 65 (2d ed. 2001 & Supp.2005) (collecting and discussing twelve cases reversed by the courts of appeals for factual insufficiency and stating that "[w]hatever the criterion [for factual sufficiency review under *Clewis* ], the Court of Criminal Appeals clearly regards factual suffi-

ciency review as seldom leading to a conclusion that a conviction is unsupported.").

**128.** 944 S.W.2d 642 (Tex.Crim.App.1996)

**129.** *Id.* at 647. The *Jackson* legal sufficiency test requires the reviewing court to examine *all* of the evidence as well, but to make that examination in the light most favorable to the State because the State was the prevailing party at trial. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

**130.** *Id.* at 647 (citations omitted)

**131.** *Id.* at 648 (emphasis in original; citations omitted).

**132.** *Id.* at 649.

**133.** 958 S.W.2d 404 (Tex.Crim.App.1997).

**134.** *Id.* at 407.

bility." [135] Thus, the weight to be given to "contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor." [136] Under this deferential standard, however, the testimony of the forty nuns in the *Clewis* hypothetical could well be rejected because acceptance of their testimony turns on an evaluation of credibility. [137]

Our next major foray into an explication of *Clewis* was in *Johnson v. State* [138] in 2000. There we found that the court of appeals had correctly found the evidence factually insufficient to support the aggravated sexual assault victim's identification of the defendant because she was not "a hundred percent positive" that he was her assailant and DNA tests showed that the defendant and assailant were both members of a group consisting of 8.5% (according to the State's expert) to 26% (according to the defense expert) of the black population. [139] We stated:

> The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean

from the trial record. A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern. Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered. [140]

After discussing both *Cain* and *Johnson*, Professor Dix, for one, concluded that "it is arguable that little meaningful difference exists between *Clewis* factual-sufficiency review and traditional review of the evidence for legal sufficiency." [141]

In 2001, we took another stab at clarify-

---

135. *Id.* at 408.

136. *Id.* at 408–09.

137. *See* Dix, *supra*, § 31.135 at 68–69 (noting that, in the forty nuns hypothetical, under a *Clewis* analysis, "an appellate court may be permitted to take into account that the State's witness's credibility has been impeached by his status and evidence of a motive to falsify, while each nun's credibility has been bolstered by her status and by the direct corroboration of nineteen others of similar character and by indirect corroboration by the testimony of twenty other similar witnesses. On the other hand, the need to avoid substantial intrusion upon [the] jury's role certainly means that the appellate court is not to speculate regarding the demeanor of the witnesses on the stand or other matters that the jurors may have considered in evaluating the credibility of each witness").

138. 23 S.W.3d 1 (Tex.Crim.App.2000).

139. *Id.* at 5.

140. *Id.* at 8 (citation omitted).

141. Dix, *supra*, § 31.135 at 71. Indeed, the same problem has been noted by commentators concerning the current civil-law legal/factual sufficiency standard of review in *City of Keller. See* W. Wendell Hall & Lynne Liberato, *Standards of Review of Sufficiency of the Evidence in Texas After City of Keller v. Wilson*, 17 (State Bar of Texas, 2006 Annual Judicial Section Conference) ("Given the standard of review articulated in legal sufficiency cases, it is questionable whether there is a distinction between legal and factual sufficiency standards of review as it appear that Texas follows the federal *Boeing v. Shipman* [411 F.2d 365 (5th Cir.1969) (*en banc*)] standard for reviewing sufficiency of the evidence challenges").

ing *Clewis* in *Goodman v. State.*[142] In that case, we acknowledged that "[p]erhaps the problem is that this Court has not always been crystal clear in explaining how the courts of appeals should analyze factual-sufficiency questions in a criminal case."[143] We relied heavily upon Chief Justice Calvert's 1960 law review article explaining "no evidence" and "insufficient evidence" standards in civil cases[144] and distinguished the two types of civil factual-insufficiency zones. In zone two, "the evidence in support of the existence of a vital fact, considered standing alone, is factually too weak to support it."[145] In zone four, there is conflicting evidence, "[s]ome evidence supports a positive inference, and some evidence supports a negative inference."[146] When the conflicting evidence is in "fair equipose," a reviewing court may not conclude that it is against the great weight and preponderance of the evidence or that it is manifestly unjust. Only when the evidentiary scales tip "radically" toward a negative finding on an essential element may the reviewing court exercise any "thirteenth juror" role and conclude that the jury's verdict is "clearly wrong."[147] The problem with *Goodman*, like that of all of our Texas factual-insufficiency cases, is that it attempted to force a square peg into a round hole. That is, the *Jackson* legal-sufficiency test already incorporates the State's burden of proof and persuasion—beyond a reasonable doubt—into its analysis while the civil standard uses a zone theory of analysis to inferentially incorporate a "preponderance of the evidence" burden of proof. The zone theory

may be useful for analyzing sufficiency issues for a defendant's affirmative defense because those defenses must be proven by a preponderance of the evidence—the same standard as in Texas civil law. But it does not translate into a second-tier sufficiency review when the State must prove every element beyond a reasonable doubt and the reviewing court must ensure that there is sufficient evidence to support a reasonable, rational verdict with proof beyond a reasonable doubt.

Under *Clewis,* the reviewing court views all of the evidence in a neutral or impartial light, not in the light most favorable to the prosecution (or the jury's verdict).[148] This "neutral light" review seems to be the driving force behind *Clewis:* it circumvents *Jackson's* "in the light most favorable to the prosecution" requirement. While this phrase might sound like pro-prosecution rhetoric, in fact it defers only to the factfinder's verdict, because the only criminal trials reviewed for sufficiency of the evidence on appeal are those in which the factfinder (whether judge or jury) agreed with the prosecution. The prosecution can never appeal the sufficiency of evidence when a judge or jury acquits a defendant, regardless of how "manifestly wrong," "unjust," or irrational the factfinder's verdict may appear to be.

In our 2003 *Swearingen v. State*[149] decision, we reiterated the importance of giving deference to the factfinder's credibility and weight determinations, *i.e.,* the review-

---

142. 66 S.W.3d 283 (Tex.Crim.App.2001).

143. *Id.* at 285.

144. *Id.* (citing Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361 (1960)).

145. *Id.*

146. *Id.*

147. *Id.* at 286 n. 5.

148. *Clewis,* 922 S.W.2d at 134; *see also Johnson,* 23 S.W.3d at 7.

149. 101 S.W.3d 89 (Tex.Crim.App.2003).

ing court must look at the evidence in the light most favorable to the jury's assessment of credibility and weight.

Although authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, a reviewing court must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence and will reverse the fact finder's determination only to arrest the occurrence of a manifest injustice. In assessing the factual sufficiency of the evidence to support a conviction we

consider all the evidence in a neutral light.[150]

These two sentences are internally inconsistent. One cannot view the evidence in a neutral light while at the same time giving deference to the factfinder's determinations of weight and credibility.

In our 2004 decision in *Zuniga v. State*,[151] we again marched into the field of factual insufficiency, once more acknowledging that the evolution of factual-sufficiency review "has been somewhat confusing." [152] In *Zuniga*, we further refined the

150.  *Id.* at 97 (citations omitted).

151.  144 S.W.3d 477 (Tex.Crim.App.2004).

152.  *Id.* at 483. As we noted in *Zuniga*, the different civil and criminal law standards of proof are an important source of confusion. The Court criticized the previous year's discussion in *Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003), in which we had stated that "the reviewing court reviews all of the evidence in a neutral light and asks whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence." *Id.* In *Zuniga* we noted that

> Once again, the preponderance-of-the-evidence language creeps into a factual-sufficiency review where the burden of proof at trial was beyond a reasonable doubt. And, the Court's statement that the reviewing court must use both standards is confusing.

144 S.W.3d at 484. True enough, but the entire civil-law factual-sufficiency review incorporating five zones is built upon an implicit assumption that the burden of persuasion is "by a preponderance of the evidence." This is precisely what the Texas Supreme Court recognized in its recent decision in *In re C.H.*, 89 S.W.3d 17 (Tex.2002) when it stated

> We conclude that the burden of proof at trial necessarily affects appellate review of the evidence. Under traditional factual sufficiency standards, a court determines if a finding is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. But that stan-

dard is inadequate when evidence is more than a preponderance (more likely than not) but is not clear and convincing. As a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.

*Id.* at 25 (citations and footnote omitted). That is, the entire five zone factual sufficiency construct, developed for cases in which the burden of proof is "by a preponderance of the evidence" must be modified when either party bears a greater burden of persuasion, such as "clear and convincing" or "beyond a reasonable doubt." *Jackson* incorporated the State's burden of proof; *Meraz* incorporated the defendant's burden of proof; *Clewis* did not.

In *In re J.F.C.*, 96 S.W.3d 256 (Tex.2002), the Texas Supreme Court realized that there was a problem in distinguishing between the civil standards for legal and factual sufficiency review when the burden of proof is heightened. That court turned to the Supreme Court's decision in *Jackson* and used it for its legal sufficiency review:

> The reasoning in *Jackson* reinforces our conclusion that to apply our traditional no evidence standard of review in a parental termination case would not afford the protections inherent in the clear and convincing standard of proof. As the example in *Jackson* highlights, a parent's rights could be terminated based on "but one slender bit of evidence" as long as the jury was properly instructed on the clear and convincing evidence burden of proof. Our legal sufficiency review, therefore, must take into

zone four "against the great weight of the evidence" prong of factual insufficiency, and stated:

> We will attempt to resolve some of the confusion created by the standard that has developed since *Clewis* by: 1) linking the burden of proof at trial to the standard of review and 2) avoiding language suggestive of a preponderance-of-the-evidence burden of proof.... There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the

consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof. *Id.* at 265–66. But the supreme court also explained its factual sufficiency standard:

> In a factual sufficiency review, as we explained in *In re C.H.*, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. We also explained in that opinion that the inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have

beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.[153]

But incorporating the "beyond a reasonable doubt" standard into factual-sufficiency review returned us to the *Jackson* legal sufficiency standard. Compare the wording of the two standards:

* "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"[154] (legal sufficiency);

* "Considering all of the evidence in a neutral light, was a jury rationally

formed a firm belief or conviction, then the evidence is factually insufficient. A court of appeals should detail in its opinion why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding. *Id.* at 266–67 (footnotes omitted). In this case, as in our *Clewis* cases, there is barely visible light between the legal and factual sufficiency standards of review. One wonders if this two-tier review will long endure in civil cases where the burden of proof is heightened. *See, e.g., In the Interest of A.M.W.*, No. 10–05–00123–CV, 2006 WL 408636 *14, 2006 Tex.App. LEXIS 4528 *48 (Tex.App.-Waco, February 22, 2006) ("Do we need a factual sufficiency review in addition to a legal sufficiency review" in parental termination cases when the standard of proof is heightened) (Gray, C.J., dissenting).

153.   *Zuniga,* 144 S.W.3d at 484–85 (footnote omitted).

154.   *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

justified in finding guilt beyond a reasonable doubt?" [155] (factual sufficiency).

One is hard-pressed to adequately explain the distinction between these two standards of review, yet a finding of legal insufficiency leads to an acquittal, while factual insufficiency leads to a retrial. The only way that these two standards can be distinguished is by viewing—in a factual-sufficiency review—all of the evidence with divine neutrality and refusing to give any deference to the jury's assessment of weight and credibility. This type of review explicitly makes the reviewing court a "thirteenth juror" who makes an independent, *de novo* determination of credibility and the weight to be given the testimony and the inferences to be drawn from the base facts. Such a review violates articles 36.13 and 38.04 of the Code of Criminal Procedure because the legislature has explicitly decreed that the jury is "the exclusive judge of the facts proved, and of the weight to be given to the testimony." [156] Therefore, I certainly agree with the Court's decision today to overrule, or at least modify, *Zuniga.*

But I would go further. I, like the Florida Supreme Court did in *Tibbs,* would conclude that there is little historical basis in Texas for creating a factual-sufficiency review as an addition to the constitutionally mandated legal-sufficiency standard. I would further conclude that neither *Clewis* nor its progeny adequately explain the dynamics of a factual-sufficiency review or how appellate courts are to view the evidence both "neutrally" and with deference to the factfinder.

Ironically, at the very time we were attempting to devise a workable structure by which to review the elements of a criminal offense under a civil-law standard that depended upon a preponderance-of-the-evidence burden of proof, our brethren on the Supreme Court of Texas were attempting to devise a workable standard for reviewing the sufficiency of evidence when a party has a heightened burden of proof— *i.e.,* when the burden of proof was "clear and convincing." They, like us, had a difficult time trying to force a square peg into a round hole of factual sufficiency review. In *Southwestern Bell Telephone Co. v. Garza,* [157] that court seemingly came to the same conclusion that I would reach: the factual conclusivity clause applies only to "questions of fact" for determining the sufficiency of evidence when the proponent bears a burden of proof by a preponderance of the evidence.[158] And, after *City of*

155. *Zuniga,* 144 S.W.3d at 484.

156. Tex. Code Crim. Proc. arts. 36.13 & 38.06.

157. 164 S.W.3d 607 (Tex.2004).

158. *See id* at 621–22, noting that the factual conclusivity clause applies to factual insufficiency questions, but

> While the "factual conclusivity clause" requires that a distinction be made between questions of fact and questions of law, it does not prescribe where the line is to be drawn, leaving that matter for this Court. Over the years, we have concluded that no evidence means not only a complete absence of evidence but also evidence which

cannot be given legal effect, either because the law does not permit it or because the evidence is too weak. . . .
The rule works in tandem with the preponderance of the evidence standard of proof; any evidence that does not merely create surmise or suspicion can be used to show that something is more likely than not. But when proof of an allegation must be clear and convincing, even evidence that does more than raise surmise and suspicion will not suffice unless it is capable of producing a firm belief or conviction that the allegation is true. Evidence of lesser quality is, in legal effect, no evidence. Whether evidence is of such quality is thus a question of law in a case with that elevated standard of proof, just as whether evidence is more

*Keller*, even that proposition may be doubtful.

I turn now to the question of whether the creation and application of a factual-sufficiency review by appellate judges is nonetheless good public policy that should be maintained despite its manifold problems.

## III.

The creation of a factual-sufficiency review in Texas criminal cases has come at an enormous jurisprudential price. As noted above, *Clewis* has been cited, discussed, or applied in almost 6,000 Texas criminal cases since 1996. This Court has spent considerable time and energy in its attempts to clarify *Clewis*. Litigants and the courts of appeals have expended enormous resources in attempting to understand *Clewis* and apply the factual-sufficiency construct to the cases before them. However, as Professor Dix has noted, the courts of appeals have found the evidence factually insufficient in a minuscule number of cases.[159]

Nonetheless, such an enormous expenditure of judicial time and resources might be a worthwhile investment if a factual-sufficiency review were directed toward a widely acknowledged "evil" in the Texas criminal justice system, and if it solved that serious problem effectively and efficiently. Unfortunately, there is nothing in *Clewis* (or its progeny) that points to any systemic criminal justice problem that a factual-sufficiency review might have been designed to resolve. Although this Court set out the "forty nuns" hypothetical in *Clewis* to show how a *Jackson* legal-sufficiency review might uphold such a conviction whereas a factual-sufficiency review would presumably reverse such a conviction, I am unable to find any "forty nun" type cases. Professor Dix has cited only twelve published cases in which the courts of appeals have reversed on factual insufficiency grounds,[160] and most of these were split decisions, while others were vacated by this Court because the lower court used the "wrong" *Clewis* analysis.

Furthermore, the "forty nuns" scenario does not pose a serious threat to the integrity of the criminal-justice system in the rest of the United States. I am aware of only two other jurisdictions, New York and the United States military courts, that currently employ a factual-sufficiency review. In each of those jurisdictions, a statute explicitly authorizes such a review.[161] There is no such statute in Texas.

than a scintilla is a question of law in a case proved by a preponderance of the evidence. *Id.* at 621 (footnote omitted). The supreme court went on to explain that

the "factual conclusivity clause" does not define the "questions of fact" on which the courts of appeals' decisions are conclusive. We held, shortly after the clause was adopted, that "whether there be any evidence or not to support an issue is a question of law, and not of fact." Evidence that does not produce a firm belief or conviction does not support an issue that must be proved by clear and convincing evidence. Whether evidence supports an issue is no less a question of law simply because the standard of proof is heightened.

*Id.* at 626–27 (footnote omitted).

159. *See* Dix, *supra*, at § 31.131 at 22 (Supp. 2005) ("Although the courts of appeals conduct factual sufficiency review in many cases, they seldom find the evidence factually insufficient").

160. Dix, *supra* at § 31.133 at 65–66 n. 7 (2d ed.2001) & 23–24 n. 7 (2005 Supp.).

161. NY CLS CPL § 470.15(5); *see People v. Bleakley*, 69 N.Y.2d 490, 492, 515 N.Y.S.2d 761, 508 N.E.2d 672, 673 (Ct.App.1987) (court of appeals erred in failing to conduct statutorily required factual-sufficiency review when defendant claimed evidence was insufficient); 10 U.S.C.S. § 866(c) ("the [Military] Court of Criminal Appeals may act only with respect to the findings and sentence as ap-

The jurisprudential evil to which a factual-sufficiency review might legitimately be a solution is the conviction of an innocent person by a biased, irrational jury. But that is precisely what the *Jackson* legal sufficiency review is designed to prevent. I am unaware of any evidence that this standard is insufficient protection of a defendant's right to legally sufficient proof of every element beyond a reasonable doubt.

One of the practical problems that the Florida Supreme Court noted when it rejected its factual-sufficiency doctrine was the "temptation appellate tribunals might have to direct a retrial merely by styling reversals as based on 'weight' when in fact there is a lack of competent substantial evidence to support the verdict or judgment and the double jeopardy clause should operate to bar retrial."[162] Although I am confident that an appellate court would not knowingly reject a valid complaint of legal insufficiency and instead grant a factual-insufficiency claim to avoid a double jeopardy bar, there may be a natural disinclination to award an appellate acquittal to a defendant who has been convicted by a jury of twelve citizens. Given the barely visible distinction between these two standards of review, a defendant who should be entitled to a complete acquittal may be forced, because of a "compromise" appellate factual-sufficiency review, to spend the time, money, and mental anguish to undergo another trial and perhaps another jury conviction.

To the extent that *Clewis* addresses a problem in the Texas criminal-justice system—manifestly unjust convictions that shock the conscience of the appellate courts—that problem can be resolved more satisfactorily in other ways.

First, reviewing courts must apply the *Jackson* legal sufficiency standard robustly, taking into account *all* of the evidence, although viewed in the light most favorable to the jury's verdict.[163] If that evidence supports a rational and reasonable finding of guilt beyond a reasonable doubt, it cannot be said that the jury's verdict is manifestly unjust or shocks the conscience of the reviewing court. The verdict is either rational and reasonable or it is not; it cannot be "semi-rational" and still meet the *Jackson* standard. There is no jurisprudential value in reversing a rational, reasonable verdict and forcing the parties to go back and do it again.

Second, if the legislature is concerned by potential "runaway" juries that render guilty verdicts which are simultaneously rational and reasonable, yet biased and manifestly unjust, it may enact a statute mandating "factual sufficiency" review. The most appropriate "thirteenth juror"—the person authorized to second guess the jury's credibility and weight decisions—would be the trial judge who has at least seen all of the witnesses first-hand, and judged their demeanor and credibility on a personal basis. He, much more than the distant appellate courts relying solely upon the cold written record, can take the pulse

---

proved by the convening authority ... as it finds correct in law and facts.... In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses").

**162.** *Tibbs*, 397 So.2d at 1125–26.

**163.** This review does not second guess the jury's credibility and weight assessment because the *Jackson* standard requires review in the light most favorable to the jury's credibility and weight determinations. *See Zimmerman v. State*, 860 S.W.2d 89, 92 (Tex.Crim. App.1993) ("Our purpose [under *Jackson* ] is not to reevaluate the weight and credibility of the evidence, but to ensure that the jury reached a rational decision").

of the jury, the advocates, the witnesses, and the defendant. Further, he would be privy to in-chamber or side-bar discussions not available to the jurors. If there is to be a factual-sufficiency review, it ought to be pursued in a motion for new trial under legislatively enacted statutes and standards.

Third, in the very same year that this Court created "factual sufficiency" review in *Clewis*, it also recognized "actual innocence" claims in post-conviction writs of habeas corpus.[164] Although such claims depend upon newly discovered evidence that was unavailable at the time of trial, this is certainly one mechanism to exonerate those whom a jury should not have convicted.[165]

Last (and least), as Judge White pointed out in his *Clewis* dissent, "[i]f a defendant's verdict of guilt confining him to prison were manifestly unjust due to a failure of the sufficiency of the evidence, would not this qualify as a ground of innocence to warrant a grant of executive clemency?"[166]

In sum, there are alternate methods by which the criminal justice system can address the "40 nuns" hypothetical—the problem of a rational jury which reaches a unanimous guilty verdict, based on evidence that proves every element of the offense beyond a reasonable doubt, which is, nevertheless, "clearly wrong and unjust."

I think that the *Clewis* "factual sufficiency" review is internally inconsistent and denigrates the role of juries in the state of Texas by requiring a "neutral" review of the evidence, while simultaneously espousing deference to the jury's exclusive role in assessing credibility and the weight to be given to the evidence. It has not contributed to the integrity of the appellate review process; it has led to inconsistent results; and it has required numerous, but futile, attempts to clarify its content and application. Furthermore, the dual legal- and factual-sufficiency review mandated by *Clewis* upended over 150 years of Texas case law that had employed a single standard for the review of sufficiency of the evidence in a criminal case.

## IV.

The present case exemplifies the problems created by the *Clewis* factual-sufficiency review because it deals with conflicting inferences that might reasonably be drawn from the same basic facts. Twelve jurors, one trial judge, and the Chief Justice of the Waco Court of Appeals all concluded that it was a reasonable inference that appellant attempted to commit sexual assault upon Jennifer Romo after he entered her home without consent, dropped his shorts to expose his erect penis, came toward her as she grabbed a butcher knife to defend herself, and attempted to pull it out of her hands.

Two justices of the Waco Court of Appeals concluded that an even more reasonable inference was that appellant did not attempt to commit sexual assault because (1) he "did not say anything threatening or anything to indicate he intended to sexually assault [Jennifer] Romo"; (2) "his conduct in grabbing the knife could also be viewed as an effort to defend himself"; (3) "he did not flee the apartment complex"; and (4) Jennifer's father "testified that her emotional state at the time was one primarily of anger and confusion rather than

---

164. *Ex parte Elizondo*, 947 S.W.2d 202, 206 (Tex.Crim.App.1996).

165. *Id.*

166. *Clewis*, 922 S.W.2d at 163 (White, J., dissenting).

fear."[167] All of these basic facts are true. A rational trier of fact might well conclude from these facts that appellant was not guilty of attempting to sexually assault Jennifer Romo. This jury did not do so. It rejected this inference and instead concluded, from the totality of the basic facts proven, that appellant did attempt to commit sexual assault. Drawing inferences from basic facts to the elements of the offense is the jury's job as long as those inferences are rational and reasonable. The mistake that *Clewis* invites is the appellate court's substitution of what it considers "a more reasonable" inference from the basic facts than the reasonable inference that the jury did, in fact, draw.

The issue of whether appellant attempted to sexually assault Jennifer Romo was well presented by both the State and defense in this case. Both advocates cogently argued their respective positions that the evidence did or did not support a finding, beyond a reasonable doubt, that appellant intended to sexually assault Jennifer Romo and had attempted to do so. Appellant emphasized that Jennifer Romo was "mad," not "scared" by appellant's actions, and she "had no idea what [appellant's] intent was." He noted that appellant never touched Jennifer or her clothes. The jury rejected the inferences that appellant asked it to draw. It chose to agree with the inferences drawn from this evidence that support the conclusion that appellant did, in fact, attempt to sexually assault Jennifer Romo. Two members of the court of appeals agreed with appellant's argument. But that agreement does not render the evidence either factually or legally insufficient, nor does it mean that the jury's verdict was the product of bias or the result was manifestly unfair. Factual disagreements and disputes lie at the heart of our jury system.

We are most likely to invoke the collective wisdom of a jury when the basic facts are in dispute or when the logical inferences to be drawn from base facts conflict. Trials are generally unnecessary in the "easy" cases, the "whale in a barrel" cases; they generally result in a plea bargain. It is when the direct testimony conflicts or the logical inferences that may be drawn from the circumstantial evidence differ, that a jury is needed to resolve those conflicts. However, it is precisely in those cases that an appellate court is most likely to second guess a jury, but it does so without considering whether the jury's credibility and weight decisions were made on the basis of irrational bias and prejudice as opposed to rational deduction or induction. The fact that a jury chose one rational alternative as opposed to another rational alternative is not a basis for reversal, but that is precisely what the *Clewis* standard permits. It permits a fortuitous "lightning strikes" reversal based on whether an appellate court (without personally seeing or hearing the witnesses) differs with a jury on its choice of what inference should be drawn or what weight should be given to certain direct testimony. Although reversals under *Clewis* are rare, they are also random, inconsistent, and based primarily on "the luck of the draw."

I would therefore overrule *Clewis* and all of its progeny, including *Zuniga*. Because the majority lops off only the most recent branch of *Clewis* and does not address the root of the problem, I most respectfully dissent.

167. *Watson*, 160 S.W.3d at 630.